108 T.C. No. 16


UNITED STATES TAX COURT


DORCHESTER INDUSTRIES INCORPORATED, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 20515-93, 20572-93,      Filed April 29, 1997.
            27121-93, 23092-94.


        R has moved for entry of decisions based on an
agreement with Ps to settle these cases.  Two Ps argue
that they never agreed to settle these cases and, even
if they did, they have repudiated that agreement.
        <u>Held</u>:  Ps entered into a settlement agreement with
R.  R's motions for entry of decision will be granted
with respect to all dockets (except with regard to W).
<u>Cole v. Commissioner</u>, 30 T.C. 665 (1958), affd. 272
F.2d 13 (2d Cir. 1959), will not be followed to the
extent that it indicates that a party to a settlement
agreement that is not filed as a stipulation may
repudiate that agreement up until (and including) the
time the case is called for trial.

---

[1]     Cases of the following petitioners are consolidated
herewith:  Frank H. Wheaton, Jr., and Mary B. Wheaton, docket
Nos. 20572-93, 27121-93, and 23092-94.

Paul R. Porreca, Darryl S. Caplan, and Ian M. Comisky, for petitioner Dorchester Industries, Inc., docket No. 20515-93.

Ian M. Comisky, Todd C. Simmens, and Darryl S. Caplan, for petitioner Frank H. Wheaton, Jr., docket Nos. 20572-93, 27121-93, and 23092-94.

Robert D. Comfort, Gregg W. Winter, and Marc Sonnenfeld, for petitioner Mary B. Wheaton, docket Nos. 20572-93, 27121-93, and 23092-94.

Patrick Whelan, William S. Garofalo, Leon St. Laurent, and Daniel K. O'Brien, for respondent.


HALPERN, Judge: Respondent has determined deficiencies in Federal income tax and additions to tax in the following cases:

| Docket No. | Petitioner(s) | Tax Years |
| --- | --- | --- |
| 20515-93 | Dorchester Industries Inc. | 1981, 1982, 1985, 1986 |
| 20572-93 | Frank Wheaton, Jr., and Mary Wheaton | 1979-1988 |
| 27121-93 | Frank Wheaton, Jr., and Mary Wheaton | 1989 |
| 23092-94 | Frank Wheaton, Jr., and Mary Wheaton | 1990 |

Respondent has moved for entry of decision with respect to each of those cases. Subsequent to respondent's moving for entry of decisions in the cases at docket Nos. 20572-93, 27121-93, and 23092-94, respondent and petitioner Mary Wheaton (Mary Wheaton) reached an agreement on and stipulated to the fact that Mary

Wheaton is an innocent spouse within the meaning of section 6013(e). On that basis, respondent has conceded all deficiencies in income tax, additions to tax, and penalties determined with respect to Mary Wheaton. We accept respondent's concession and shall enter decisions accordingly.

Respondent asks that we enter decisions with respect to petitioners Dorchester Industries Inc. (Dorchester) and Frank Wheaton, Jr. (Frank Wheaton), based on a settlement agreement that respondent claims those petitioners entered into on November 6, 1995. We must determine whether Dorchester and Frank Wheaton did, in fact, enter into such an agreement and, if so, the consequence thereof. Respondent asks that we enter decisions with respect to Dorchester and Frank Wheaton as follows:

Docket No. 20515-93 (Dorchester Industries)

|  |  | Additions to Tax | | |
| --- | --- | --- | --- | --- |
| Year | Deficiency | Sec. 6653(b)(1) | Sec. 6653(b)(2) | Sec. 6661 |
| 1981 | $92,643 | $46,322 | None | None |
| 1982 | 89,411 | 44,706 | [1] | None |
| 1985 | 230,360 | 115,180 | [1] | $57,590 |

[1] The addition to tax under I.R.C. sec. 6653(b)(2) is 50 percent of the interest payable under I.R.C. sec. 6601 with respect to the portion of the underpayment which is attributable to fraud, which is the entire deficiency for each of the taxable years 1982 and 1985.

|  |  | Additions to Tax | |
| --- | --- | --- | --- |
| Year | Deficiency | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) |
| 1986 | $1,376 | $1,032 | [1] |

[1] The addition to tax under I.R.C. sec. 6653(b)(1)(B) is 50 percent of the interest payable under I.R.C. sec. 6601 with respect to the portion of the underpayment which is attributable

to fraud, which is the entire deficiency for the taxable year 1986.

Docket No. 20572-93 (Frank H. Wheaton, Jr.)

|  |  | Additions to Tax |
| --- | --- | --- |
|  |  | Sec. |
| Year | Deficiency | 6653(b) |
| 1979 | $65,558 | $32,779 |
| 1980 | 1,026,785 | 513,393 |
| 1981 | 926,036 | 463,018 |

|  |  | Additions to Tax | | |
| --- | --- | --- | --- | --- |
|  |  | Sec. | Sec. | Sec. |
| Year | Deficiency | 6653(b)(1) | 6653(b)(2) | 6661 |
| 1982 | $1,191,646 | $595,823 | [1] | $297,912 |
| 1983 | 587,593 | 293,797 | [1] | 146,898 |
| 1984 | 886,466 | 443,233 | [1] | 221,617 |
| 1985 | 1,145,974 | 572,987 | [1] | 286,494 |

[1] The addition to tax under I.R.C. sec. 6653(b)(2) is 50 percent of the interest payable under I.R.C. sec. 6601 with respect to the portion of the underpayment which is attributable to fraud, which is the entire deficiency for the taxable years 1982, 1983, 1984, and 1985.

|  |  | Additions to Tax | | | |
| --- | --- | --- | --- | --- | --- |
|  |  | Sec. | Sec. | Sec. | Sec. |
| Year | Deficiency | 6653(b)(1)(A) | 6653(b)(1)(B) | 6661 | 6662 |
| 1986 | $1,141,552 | $856,164 | [1] | $285,388 | -- |
| 1987 | 940,833 | 533,332 | [1] | 177,777 | $45,945 |
| 1988 | 559,806 | 419,855 | None | 139,952 | -- |

[1] The addition to tax under I.R.C. sec. 6653(b)(1)(B) is 50 percent of the interest payable under I.R.C. sec. 6601 with respect to the portion of the underpayment which is attributable to fraud, which is the entire deficiency for the taxable year 1986 and $711,109 of the deficiency for the taxable year 1987.

Docket No. 27121-93 (Frank H. Wheaton, Jr.)

| Year | Deficiency | Sec. 6662 |
| --- | --- | --- |
| 1989 | $235,948 | $47,189.60 |

Docket No. 23092-94 (Frank H. Wheaton, Jr.)

| Year | Deficiency | Sec. 6662 |
| --- | --- | --- |
| 1990 | $230,981 | $46,196 |

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Introduction

Frank Wheaton is married to Mary Wheaton, and they resided in Millville, New Jersey, at the time their petitions in these cases were filed. They made joint returns of income for the taxable (calendar) years 1979 through 1990.

Dorchester is a New Jersey corporation. It is engaged in shipbuilding and repair. Dorchester's mailing address was in Dorchester, New Jersey, at the time its petition in this case was filed. Dorchester is a calendar-year taxpayer.

At all times relevant to the issues in these cases, Frank Wheaton was the sole shareholder of Dorchester. Frank Wheaton has been the president of Dorchester since at least 1991.

The Scheduled Trial

By order of the Chief Judge dated January 19, 1995, the cases at docket Nos. 20515-93, 20572-93, and 27121-93 (the 1993 docketed cases) were assigned to Judge James S. Halpern for disposition. By order dated February 14, 1995, the 1993 docketed cases were consolidated and set on a special trial calendar to commence in Philadelphia, Pennsylvania, on October 30, 1995. By order dated October 19, 1995, the 1993 docketed cases were set

for a pretrial conference on October 26, 1995, in Washington, D.C. At that conference, the Court was informed that the trial in those cases would take approximately 3-1/2 weeks. The parties' pretrial memoranda set forth more than 70 issues; respondent, alone, listed 60 witnesses. Thousands of hours had gone into trial preparation. The Court conducted a lengthy discussion of the issues to be tried, and the Court determined that both the Court and the parties would benefit if, before commencing trial, the parties could discuss their differences with an impartial third party, who might suggest a basis for settlement of some or all of the items in issue. Accordingly, by order dated October 27, 1995, the Court continued the cases for trial from October 30, 1995, to November 8, 1995. The parties were directed to meet with Chief Special Trial Judge Peter J. Panuthos to discuss their differences and determine whether any or all of the items in issue might be disposed of by settlement.

A meeting with Chief Special Trial Judge Panuthos commenced on November 2, 1995, in Washington, D.C. Respondent was represented by attorney William Garofalo (Garofalo). Dorchester and the Wheatons were represented by attorneys William Gilson (Gilson) and Gary Wodlinger (Wodlinger). Neither Frank nor Mary Wheaton attended the meeting, although Frank Wheaton was present in Washington, D.C. On the evening of November 2, 1995, after their initial meeting with Chief Special Trial Judge Panuthos, Gilson and Wodlinger met with Frank Wheaton at his hotel in

Washington, D.C., and expressed doubt as to the persuasiveness of certain of their key arguments. Frank Wheaton told Gilson and Wodlinger that he would not appear or testify at trial. Gilson informed Frank Wheaton that he was the principal witness in about 90 percent of the issues in the cases and that, without him, Gilson and Wodlinger had no chance. Gilson informed Frank Wheaton that, if he did not testify, there would be a default and a judgment for $41 million--"$40 million against you [personally]". Frank Wheaton again said that he would not show up for trial. He said that he did not have $40 million, he was not spending any more money, and he was getting back to business. Frank Wheaton instructed Gilson and Wodlinger to get a settlement number from the Internal Revenue Service (IRS). He did not instruct Gilson and Wodlinger to set any conditions on the settlement.

On the morning of November 3, 1995, Gilson and Wodlinger met with Garofalo and Chief Special Trial Judge Panuthos. Gilson advised Garofalo that Frank Wheaton wished to settle the cases. Garofalo told Gilson that (1) he would prepare a settlement offer based on the amount of tax and penalties for which respondent believed petitioners were liable, (2) respondent would only settle the instant cases if Gilson submitted to respondent written settlement documents prior to 11:00 a.m., on Monday, November 6, 1995, and (3) he had no authority to settle any dispute with Frank and Mary Wheaton for 1991, a year not then

before the Court.  Subsequently, Frank Wheaton, Gilson, Wodlinger, and Garofalo left Washington, D.C.

Later on November 3, 1995, Garofalo transmitted a letter via facsimile to Gilson (the November 3 letter).  The November 3 letter contains attachments setting forth respondent's proposed settlement figures with respect to the 1993 docketed cases.  In addition, the attachments contain figures to settle the case at docket No. 23092-94, which involves the tax liability of Frank and Mary Wheaton for 1990 (the 1993 docketed cases and the case at docket No. 23092-94 hereafter referred to together as the docketed cases).  The November 3 letter required a response by 11:00 a.m., on Monday, November 6, 1995.  The settlement figures proposed by respondent in attachments to the November 3 letter are substantially the same as the figures contained in respondent's motions for entry of decision, except that the attachments contain calculations of interest that are not part of respondent's motions for entry of decision.  Including interest, the attachments show amounts due in excess of $40 million.

Richard F. Riley (Riley) and K. Martin Worthy (Worthy) are experienced tax attorneys associated with the law firm of Hopkins & Sutter as partner and senior counsel, respectively.  They had been retained by Frank Wheaton to consult with his trial counsel, Gilson and Wodlinger, regarding the docketed cases.  At Frank Wheaton's request, Gilson and Wodlinger conferred by telephone with Riley and Worthy during the weekend of November 4 and 5,

1995, concerning the proposed settlement.  During that weekend, Frank Wheaton also spoke with Riley and Worthy and, separately, with Wodlinger.  As a result of those conversations, a consensus was formed among the various attorneys and Frank Wheaton to make a counteroffer to the Government's proposal contained in the November 3 letter; the counteroffer was to be 75 percent of the amounts proposed by the Government.  Frank Wheaton and his attorneys realized, however, that the Government might not accept that counteroffer.  On the morning of Monday, November 6, 1995, before speaking by telephone with Garofalo, Gilson telephoned Frank Wheaton and asked for instructions if the Government were to refuse the 75-percent counteroffer.  Frank Wheaton instructed Gilson that, in that circumstance, he was to proceed and take the Government's number.  Frank Wheaton answered "yes" when Gilson asked him if he realized that there would be a $40 million judgment.  Although there had been a discussion among the attorneys and a discussion between the attorneys and Frank Wheaton regarding Frank Wheaton's inability to pay $40 million and the possibility of negotiating some final payment obligation for both the docketed cases and other years under examination (but not yet petitioned to the Tax Court), Frank Wheaton did not attach any condition to his instruction to Gilson that, if the Government would not compromise, he was to take the Government's number.

On the morning of November 6, 1995, after speaking with Frank Wheaton, Gilson spoke by telephone with Garofalo, who rejected the 75-percent counteroffer. Garofalo then told Gilson of certain minor changes to the Government's proposed settlement figures. Gilson made a note of those numbers. Gilson informed Garofalo that the Government's proposals were acceptable. At some point during the morning of November 6, 1995, Garofalo or his secretary transmitted by facsimile, and Gilson received, a letter (the November 6 letter), which made the changes to the Government's proposed settlement figures that had previously been communicated by Garofalo to Gilson by telephone and that reduced the settlement amount slightly. The November 6 letter was signed by Patrick E. Whelan, Assistant District Counsel for the IRS. The November 6 letter required a response by 1:00 p.m. Also at some point during the morning of November 6, 1995, Garofalo, by telephone, informed Gilson that (1) in light of Gilson's statement that the Government's proposals were acceptable, he need not worry about the 1:00 p.m., deadline and (2) he should get his written response to Garofalo as soon as possible.

Later, on November 6, 1995, Gilson faxed to Frank Wheaton a letter (the November 6 letter to Wheaton) that begins: "This letter will confirm the authority given to us to resolve the pending United States Tax Court matters involving calendar years 1979 through 1990." The November 6 letter to Wheaton then summarizes the events and discussions of the few days prior to

the letter.  It states that, earlier that day, a report by telephone had been made by Gilson to Frank Wheaton of the morning's telephone conversation between Gilson and Garofalo and that Frank Wheaton had instructed Gilson to continue to settle the matter.  It also states that, consistent with the telephone report and resulting instruction, correspondence accepting the Government's settlement proposal had been faxed simultaneously to Garofalo and to Frank Wheaton.  In addition, the November 6 letter to Wheaton states that Riley's office will take the lead in "an offer in compromise" and that it would be necessary for Frank Wheaton to provide a list of assets to the IRS at some time in the future.

At 3:30 p.m., on November 6, 1995, Gilson faxed a letter to Garofalo (the November 6 response) accepting the revised settlement proposal "as set forth in your revised offer of this morning, November 6, 1995."  The November 6 response requests that Garofalo advise the Court of the settlement in order to avoid the necessity of appearing for trial on Wednesday, November 8, 1995, in Philadelphia, Pennsylvania.

Garofalo informed the Court of the settlement.  By order dated November 6, 1995, upon information that the parties had reached a basis for settlement, the Court struck the 1993 docketed cases from the November 8, 1995, Philadelphia, Pennsylvania, special trial session and ordered the parties to

submit settlement documents to the Court on or before December 4, 1995.

## Subsequent Events

Sometime after November 8, 1995, Frank Wheaton changed his mind.  On November 21, 1995, Garofalo mailed decision documents to Gilson, which reflected the basis for the settlement that had been reached.  Frank Wheaton refused to execute those decision documents.  As a result, respondent moved for entry of decision in each of the docketed cases.

## Representation

Gilson and Wodlinger entered their appearances as counsel for Dorchester on April 11, 1994.  They entered their appearances as counsel for Frank and Mary Wheaton in the remaining docketed cases by subscribing the petitions in those cases.

Prior to entering their appearances in those remaining docketed cases, Gilson and Wodlinger met with Frank and Mary Wheaton to discuss representation with respect to Frank and Mary Wheaton's 1979 through 1989 taxable years.  Gilson and Wodlinger raised the question of separate counsel for Frank and Mary Wheaton and for Dorchester.  Frank Wheaton advised Gilson and Wodlinger that he did not want to retain additional attorneys and that he wanted Gilson and Wodlinger to represent all three parties.  Mary Wheaton stated that she did not want separate counsel and directed Gilson and Wodlinger to take their instructions from Frank Wheaton.  Gilson and Wodlinger raised the

question of an innocent spouse defense for Mary Wheaton. Mary Wheaton said that she did not want to raise that defense. Frank Wheaton said that he was not going to have that defense raised.

Gilson and Wodlinger have withdrawn as counsel in all of the docketed cases.

OPINION

I. Introduction

Respondent has moved for entry of decision in each of these consolidated cases in accordance with a settlement agreement of the parties. Because respondent and petitioner Mary Wheaton (Mary Wheaton) have since reached an agreement on and have stipulated to the fact that Mary Wheaton is an innocent spouse within the meaning of section 6013(e), there are no issues with respect to Mary Wheaton that we must address. With respect to petitioners Dorchester Industries Inc. (Dorchester) and Frank Wheaton, Jr. (Frank Wheaton), we must determine whether those parties and respondent, in fact, entered into a settlement agreement and, if so, the consequences thereof.

At the conclusion of an evidentiary hearing that commenced on July 26, 1996 (the hearing), the parties (other than Mary Wheaton) were directed to file briefs setting forth proposed findings of fact and argument. The Court set page limitations on the argument portions of the opening and answering briefs of 25 and 15 pages, respectively. The Court stated that, if additional pages for argument were desired, a party would have to

request leave of Court to exceed the page limitations.  The argument portion of Frank Wheaton's opening brief consists of 25 pages; however, at its beginning, it carries a footnote stating that, due to the page limitations imposed by the Court, Frank Wheaton incorporates by reference arguments contained in certain previously filed papers.  Frank Wheaton did not ask for leave to exceed the page limitations imposed by the Court. Accordingly, the Court will not incorporate into his brief the referenced arguments and deems him to have failed to raise any arguments not set forth plainly in either his opening or answering brief.

Dorchester has failed to file an opening brief.  By its counsel, Paul Porreca, Dorchester has given notice of its adoption of Frank Wheaton's reply brief.  We assume that Dorchester wishes to adopt the arguments made by Frank Wheaton in his opening brief.

II.  Settlement Agreement

A.  Introduction

A controversy before this Court may be settled by agreement of the parties.  Recently, we have stated some general propositions regarding settlement agreements:

> For almost a century, it has been settled that voluntary settlement of civil controversies is in high judicial favor. Williams v. First Natl. Bank, 216 U.S. 582, 595 (1910); St. Louis Mining & Milling Co. v. Montana Mining Co., 171 U.S. 650, 656 (1898).  A valid settlement, once reached, cannot be repudiated by either party, and after the parties have entered into a

binding settlement agreement, the actual merits of the settled controversy are without consequence. This Court has declined to set aside a settlement duly executed by the parties and filed with the Court in the absence of fraud or mutual mistake. Stamm Intl. Corp. v. Commissioner, 90 T.C. 315 (1988); Spector v. Commissioner, 42 T.C. 110 (1964). However, a court will not force a settlement on parties where no settlement was intended. Autera v. Robinson, 419 F.2d 1197 (D.C. Cir. 1969).

A settlement is a contract and, consequently, general principles of contract law determine whether a settlement has been reached. Robbins Tire & Rubber Co. v. Commissioner, 52 T.C. 420, 435-436, supplemented by 53 T.C. 275 (1969). A prerequisite to the formation of a contract is an objective manifestation of mutual assent to its essential terms. Heil v. Commissioner, T.C. Memo. 1994-417; 17A Am. Jur. 2d, Contracts, secs. 27 and 28 (1991); 1 Williston on Contracts, sec. 3:5 (4th ed. 1990). Mutual assent generally requires an offer and an acceptance. 17A Am. Jur. 2d, Contracts, sec. 41 (1991). "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." 1 Restatement, Contracts 2d, sec. 24 (1981).

In a tax case, it "is not necessary that the parties execute a closing agreement under section 7121 in order to settle a case pending before this Court, but, rather, a settlement agreement may be reached through offer and acceptance made by letter, or even in the absence of a writing." Lamborn v. Commissioner, T.C. Memo. 1994-515. Settlement offers made and accepted by letters are enforced as binding agreements. Haiduk v. Commissioner, T.C. Memo. 1990-506; see also Himmelwright v. Commissioner, T.C. Memo. 1988-114.

Manko v. Commissioner, T.C. Memo. 1995-10.

B.  Authority

If a settlement agreement was reached here, it was not reached by Frank Wheaton negotiating directly on his own behalf and on behalf of Dorchester. Respondent was represented by

attorney William Garofalo (Garofalo), and Dorchester and Frank Wheaton were represented by attorneys William Gilson (Gilson) and Gary Wodlinger (Wodlinger). No question has been raised as to Frank Wheaton's authority to act on behalf of Dorchester, of which he was president and sole shareholder. Frank Wheaton and Dorchester do question, however, the authority of Gilson to enter into any settlement agreement on their behalf.

> Whether an attorney has authority to act on behalf of a taxpayer is a factual question to be decided according to the common law principles of agency. Adams v. Commissioner, 85 T.C. 359, 369-372 (1985); Kraasch v. Commissioner, 70 T.C. 623, 627-629 (1978). Under common law principles of agency, authority may be granted by express statements or may be derived by implication from the principal's words or deeds. Dahl v. Commissioner, T.C. Memo. 1995-179; DiSanza v. Commissioner, T.C. Memo. 1993-142, affd. 9 F.3d 1538 (2d Cir. 1993); Casey v. Commissioner, T.C. Memo. 1992-672; John Arnold Executrak Systems, Inc. v. Commissioner, T.C. Memo. 1990-6.

Estate of Quirk v. Commissioner, T.C. Memo. 1995-234.

We have no doubt that Gilson received express authority from Frank Wheaton to settle the cases at docket Nos. 20515-93, 20572-93, 27121-93, and 23092-94 (the docketed cases) on the basis presented by the Government. Indeed, Frank Wheaton conceded at the hearing that he authorized Gilson and Wodlinger to enter into an agreement with the Internal Revenue Service (IRS). Frank Wheaton testified:

> They [Gilson and Wodlinger] said they had talked to Mr. Riley and they all agreed that the best thing for us to do was to agree to the statements of the IRS and that would amount to a $40 million fine * * *. But I said as long as Mr. Riley and you two [Gilson and

Wodlinger] think that's the thing to do, you're my
counsel, I guess we'll have to do so.  [Emphasis
added.]

In response to questioning by the Court, Frank Wheaton testified
that he instructed Gilson to enter into a settlement agreement on
the terms presented by the Government and then subsequently
decided that he did not want to settle the cases.  Frank Wheaton
also testified that he understood that the settlement agreement
would encompass the docketed cases and would not affect
petitioners' tax liabilities with respect to any tax years not
before the Court.  Under these circumstances, we find that Gilson
possessed express authority to enter into the settlement
agreement on behalf of Dorchester and Frank Wheaton.

C.  Offer and Acceptance

On November 3, 1995, Garofalo transmitted a letter via
facsimile to Gilson (the November 3 letter).  The November 3
letter contains respondent's proposed settlement figures for the
docketed cases.  The November 3 letter required a response by
11:00 a.m., on Monday, November 6, 1995.  In a telephone
conversation with Gilson during the morning of that Monday,
Garofalo told Gilson of certain changes to those proposed
settlement figures.  Gilson told Garofalo that the Government's
proposals were acceptable.  At some point during the morning of
November 6, 1995, Garofalo or his secretary transmitted by
facsimile, and Gilson received, a letter (the November 6 letter),
which made the changes to the Government's proposed settlement

figures that were previously communicated by Garofalo to Gilson by telephone and which reduced the settlement amount slightly. The November 6 letter required a response by 1:00 p.m. Also by telephone during the morning of November 6, 1995, Garofalo extended the 1:00 p.m., deadline contained in the November 6 letter. At 3:30 p.m., on November 6, 1995, Gilson faxed a letter to Garofalo (the November 6 response) accepting respondent's revised offer of November 6, 1995.

Dorchester and Frank Wheaton point to some uncertainty in Garofalo's testimony concerning whether he faxed the November 6 letter to Gilson or whether he had his secretary fax that letter. Dorchester and Wheaton conclude that respondent has failed to prove that the November 6 letter was transmitted to Gilson on November 6, 1995. They view the November 3 letter as a proposal and not a definite offer. They argue:

> A prerequisite to the formation of an agreement is the manifestation of mutual assent to material terms by all the parties. Lamborn v. Commissioner, T.C. Memo. 1994-515. Consequently, there must be a "meeting of the minds" on material terms in order to reach an agreement. Olefins Trading, Inc. v. [Han Yang Chem.] Corp., 9 F.3d 282 (3d Cir. 1993). This intended agreement [the November 3 letter] purports to conclude cases involving eleven calendar years, between 133 and 155 issues and numerous penalties. This document outlined above simply does not show a settlement was ever reached of a case of this complexity and magnitude.

The attachments to the November 3 letter contain a great amount of detail supporting respondent's proposed settlement figures for the docketed cases. On the morning of November 6,

1995, by telephone, Garofalo made certain minor changes to those proposed settlement figures, which changes were confirmed by the November 6 letter.  The November 6 letter was faxed to and received by Gilson during the morning on November 6, 1995.  We base that finding principally on Garofalo's testimony that he believed that the November 6 letter was faxed to Gilson at 11:30 a.m., on November 6, 1995, and Gilson's testimony that he recollects reviewing the November 6 letter on November 6, 1995.  Moreover, the November 6 response refers to Garofalo's "revised offer of this morning, November 6, 1995."  We are convinced that the proposed settlement figures conveyed to Gilson by way of the November 3 letter and modified somewhat on November 6, 1995, by way of the November 6 letter constitute the definite and material terms of an offer to settle the docketed cases, and we so find.

Dorchester and Frank Wheaton argue that the November 6 response, faxed by Gilson to Garofalo at 3:30 p.m., was too late and, thus, no agreement was reached.  We do not agree.  First, Gilson accepted the Government's proposals during his telephone conversation with Garofalo during the morning of November 6, 1995.  The November 3 letter, however, called for a written acceptance.  The November 6 letter extended the time for the written acceptance to 1:00 p.m.  By telephone during the morning of November 6, 1995, Garofalo extended the 1:00 p.m., deadline contained in the November 6 letter.  It is hornbook law that, if an acceptance fails to comply with a time requirement in an

offer, the time requirement may be waived.  E.g., 1 Jaeger, Williston on Contracts, sec. 53, at 171 (3d ed. 1957):

> Not infrequently an offeror who has imposed a limit of time in his offer does not care to insist upon it and by further negotiations may indicate a continued willingness to stand by the terms of his offer.  Any such manifestation of continued willingness is in effect a new offer, which may be accepted and if accepted will ripen into a new contract.  [Fn. ref. omitted.]

We have no doubt that the time requirement contained in the November 6 letter was waived and that the November 6 response was a timely acceptance of an offer made by respondent, and we so find.  Indeed, respondent relied on that response in informing the Court that no trial was necessary.

The contractual prerequisites of offer and acceptance are present:  The November 3 letter, the November 6 letter, the November 6 response, and the surrounding circumstances constitute the objective manifestation of mutual assent to the essential terms of a settlement agreement.  The agreement that was reached is the agreement proposed in the November 3 letter, as modified during the morning telephone conversation of November 6, 1995, which is all set forth in the November 6 letter.  We believe that the parties entered into a contract to settle the docketed cases, and we so find.

D.  Repudiation

By order dated November 6, 1995, upon information that the parties had reached a basis for settlement, the Court struck the

cases at docket Nos. 20515-93, 20572-93, and 27121-93 (the 1993 docketed cases) from the November 8, 1995, Philadelphia, Pennsylvania, special trial session (the November 8 special trial session) and ordered the parties to submit settlement documents to the Court on or before December 4, 1995. On November 21, 1995, Garofalo mailed decision documents (the decision documents) to Gilson. The decision documents address not only the 1993 docketed cases but also the case at docket No. 23092-94 (the 1994 docketed case), which deals with Frank and Mary Wheaton's 1990 tax year (the 1993 docketed cases and the 1994 docketed case being referred to together as the docketed cases). Frank Wheaton refused to execute the decision documents. At the hearing, the Court asked Frank Wheaton why he believed the trial did not start on November 8, 1995. He answered that he assumed that the trial did not start because he had agreed to the Government's settlement proposals. He testified that the reason he had refused to execute the decision documents was because he had changed his mind about the settlement sometime after November 8, 1995. Dorchester and Frank Wheaton argue that Frank Wheaton was free to repudiate his agreements with the Government when he was presented with the decision documents some time soon after November 21, 1995.

Among the general propositions set forth above (section II.A) are that (1) a settlement is a contract and (2) a valid settlement, once reached, cannot be repudiated by either party.

Nevertheless: "The law is well established that a court has some power to set aside a settlement stipulation filed with it but its discretion will not be exercised unless good cause is shown." Saigh v. Commissioner, 26 T.C. 171, 176 (1956). In Adams v. Commissioner, 85 T.C. 359, 375 (1985), we set forth criteria appropriate for determining when we should exercise our discretion to modify or set aside a settlement stipulation:

> The party seeking modification * * * must show that the failure to allow the modification might prejudice him. * * * Discretion should be exercised to allow modification where no substantial injury will be occasioned to the opposing party; refusal to allow modification might result in injustice to the moving party; and the inconvenience to the Court is slight. * * * [Citations omitted.]

In Himmelwright v. Commissioner, T.C. Memo. 1988-114, we faced a situation similar to that which we face with respect to the 1993 docketed cases. In the Himmelwright case, we had canceled a trial in reliance on the representation of counsel for one of the parties that a settlement agreement had been reached. We enforced that agreement, memorialized in a letter from the taxpayer's counsel to the Commissioner's counsel, by analogizing the taxpayer's request to be relieved of the agreement to a motion to vacate a settlement agreement filed on the eve of trial. In Stamm Intl. Corp. v. Commissioner, 90 T.C. 315 (1988), the Commissioner moved to vacate a settlement agreement negotiated shortly before trial was scheduled to commence. We stated that the settlement agreement had led to the vacation of

the trial date and would have led to entry of decisions had the parties complied with their agreement and the Court's order with respect to settlement documents. Id. at 321. Because of those circumstances, we stated that more stringent standards were applicable than the criteria set forth in Adams v. Commissioner, supra. We stated that the moving party had to satisfy standards akin to those applicable in vacating a judgment entered into by consent: "In such cases, the parties are held to their agreement without regard to whether the judgment is correct on the merits." Id. at 322. Absent a showing of lack of formal consent, fraud, mistake, or some similar ground, a judgment entered by consent will be upheld. E.g., Swift & Co. v. United States, 276 U.S. 311, 324 (1928). Those same principles are applicable here. The Court struck the 1993 docketed cases from the November 8 special trial session in reliance on the representation made by the parties that they had reached a basis for settlement. Dorchester and Frank Wheaton have failed to prove fraud, mistake, or some similar ground; accordingly they are bound by the terms of the settlement with respect to the 1993 docketed cases.

The situation is different with respect to the case at docket No. 23092-94 (the 1994 docketed case), which deals with Frank and Mary Wheaton's 1990 tax year. The 1994 docketed case was not set for trial at the November 8 special trial session. It was noticed for trial on May 13, 1996, in Philadelphia, Pennsylvania (which trial was continued). Trial was not imminent

on November 6, 1995, when respondent and Frank Wheaton entered into the settlement agreement. The 1994 docketed case is, thus, unlike Himmelwright v. Commissioner, supra, and we need not apply the stringent eve-of-trial standards of Stamm Intl. Corp. v. Commissioner, supra. For good cause shown, we may refuse to implement the settlement agreement as it applies to the 1994 docketed case. Cf. Saigh v. Commissioner, supra at 176 (stating that rule with respect to a settlement stipulation). We apply the criteria set forth in Adams v. Commissioner, supra.

Since the settlement agreement entered into by respondent and petitioners amounts to a virtual capitulation by petitioners, it does not appear that respondent gave up much of anything to get a settlement of the 1994 docketed case or would be substantially injured were we to modify the settlement agreement with respect to the 1994 docketed case. Respondent might be forced to try that case, but that possibility exists for any decision to set aside a settlement agreement. If attention is focused only on the 1994 docketed case, the Court has not been unduly inconvenienced. Nevertheless, Frank Wheaton has failed to prove that a failure to modify the settlement agreement would result in an injustice being done to him. He consulted with four attorneys after receiving respondent's settlement proposal. Two of those attorneys, Richard F. Riley and K. Martin Worthy, are experienced tax attorneys. Frank Wheaton has not alleged that respondent tried to deceive him by including the 1994 docketed

case in the settlement proposal; indeed, it appears that the 1994 docketed case was included in the settlement proposal at Frank Wheaton's request in order to settle as many tax years as possible. Frank Wheaton cannot assert that he was not fully cognizant of the terms for settling the 1994 docketed case or that he did not approve that settlement. In fact, beyond the assignments of error and averments in the petition, he has failed to argue that there is any merit to his claims with respect to the 1994 docketed case. He has not informed us what witnesses he would call, what they would testify to, or what other evidence he would present. All we know is that Frank Wheaton changed his mind with respect to settling that case. Frank Wheaton has failed to prove that any injustice would result by holding him to his bargain, and he has failed to convince us that we should exercise our discretion to modify the settlement agreement as it applies to the 1994 docketed case.

Finally, we are not compelled to allow Frank Wheaton to repudiate the settlement agreement with respect to the 1994 docketed case because of what we said in Cole v. Commissioner, 30 T.C. 665, 674 (1958), affd. 272 F.2d 13 (2d Cir. 1959). In the Cole case, we refused to redetermine deficiencies in accord with certain proposed stipulations that we found had not been executed by the Commissioner and had not been filed in the Court as stipulations. After finding that the proposed stipulations had

not been accepted or signed on behalf of the Commissioner, we

added:

> Moreover, even if it be assumed that either stipulation had been signed, petitioner would not be entitled to have an order entered disposing of the case upon the basis of such document. This Court will, of course, enter an order adjudicating liability in accordance with an agreement of the parties, for the existence of such agreement shows that there is no longer any controversy between them. And once a stipulation is filed by both sides, it is binding upon them. Cf. Fred M. Saigh, Jr., 26 T.C. 171. But where, for whatever reason, the parties are not in agreement at the time the case is called for trial, it is wholly irrelevant in this connection that they may have been in agreement at some earlier time. The inquiry into whether respondent's Chief Counsel had "signed" the stipulations in this case is therefore beside the point. Furthermore, the mere signing of a paper, while retaining custody of it, does not necessarily render it an operative document. Until it is delivered or until some appropriate action is taken with respect thereto, it is far from clear that the signer may not scratch out his signature.

Id. (emphasis added). In Estate of Jones v. Commissioner, 795

F.2d 566, 573 (6th Cir. 1986), affg. T.C. Memo. 1984-53, the

Court of Appeals for the Sixth Circuit (the Sixth Circuit) upheld

this Court's determination that a settlement was not validly

executed because it had not been filed with the Court and had not

been signed by or on behalf of the Chief Counsel, although it had

been approved by an IRS Appeals officer. This Court had relied

on the Cole case, which the Sixth Circuit quoted in part,

beginning its quotation with the underscored language set forth

above. The Sixth Circuit acknowledged that, had it been passing

on a settlement agreement independently reached "by ordinary

litigation", it might well have concluded that such agreement should be enforced. It concluded, however, that this Court had not erred as a matter of law in reaching its conclusion. This Court, however, has not been consistent in interpreting (or even acknowledging) the Cole case. For example, in Nelson Bros., Inc. v. Commissioner, T.C. Memo. 1991-52, we cast doubt on whether an agreement could be repudiated before trial. We emphasized what we had said in the Cole case about the mere signing of a proposed stipulation not always being sufficient evidence that the parties were in agreement. We continued:

> Instead, delivery of the stipulation or other appropriate action would be needed in order for this Court to accept that a binding agreement was reached by the parties. Therefore, [in the Cole case] we did not state that the parties, while in agreement before trial, could cancel the agreement if they were no longer in agreement when the case was called for trial. * * *

Id. In Haiduk v. Commissioner, T.C. Memo. 1990-506, we enforced a settlement agreement evidenced only by an exchange of letters between the parties. We did not even mention the Cole case. The repudiation language in the Cole case does not recite a rule of contract law. Cf. Estate of Jones v. Commissioner, supra at 573. It appears to implement this Court's inherent power to regulate what will be tried before it. See Saigh v. Commissioner, 26 T.C. at 176. We have reconsidered the Cole case, and we can see no reason to empower a party to a settlement agreement with the authority unilaterally to set that agreement aside. Upon a

showing of sufficient cause, we have the power to modify the agreement. Saigh v. Commissioner, supra. In light of those considerations, we will not follow the Cole v. Commissioner, supra, case to the extent it indicates that a party to a settlement agreement that is not filed as a stipulation may repudiate that agreement up until (and including) the time the case is called for trial.

E. Setting Aside the Agreement

Dorchester and Frank Wheaton argue that each was ill-served because, in addition to representing them, Gilson and Wodlinger represented Mary Wheaton. Dorchester and Frank Wheaton claim that Gilson and Wodlinger faced a "blatant" and "nonwaivable" conflict of interest in representing both Mary and Frank Wheaton. That conflict, they claim, arises because Mary Wheaton had available to her an "innocent spouse" defense under section 6013(e), and one element of that defense is that the understatement of tax on the joint return be attributable to "grossly erroneous" items of Frank Wheaton. See sec. 6013(e)(1)(B), (e)(2).

Certainly, one spouse's claim that she (he) is an innocent spouse can present a conflict of interest to counsel trying to represent both spouses. If, indeed, the spouses do have differing interests with respect to any issue in a case, our rules provide that counsel must secure informed consent of the client, withdraw from the case, or take whatever other steps are

necessary to obviate the conflict of interest. Rule 24(f). On rare occasion, we require separate representation of persons with differing interests, even if an apparent waiver has been obtained. E.g., Para Techs. Trust v. Commissioner, T.C. Memo. 1992-575.

Although Gilson and Wodlinger may have believed that there was some chance that Mary Wheaton could succeed with an innocent spouse defense, they were far from convinced that such a claim would succeed. Wodlinger testified that he believed that Mary Wheaton failed two of the tests for innocent spouse relief. Gilson and Wodlinger discussed both the innocent spouse defense and separate representation with Mary Wheaton, and she stated that she did not want separate counsel and did not want to raise the innocent spouse defense. She instructed Gilson and Wodlinger to take their instructions from Frank Wheaton. Frank Wheaton directed Gilson and Wodlinger not to raise an innocent spouse defense.

We believe that Gilson and Wodlinger did obtain informed consent from Mary Wheaton to represent both her and Frank Wheaton with respect to the 1993 docketed cases, and we so find. Moreover, nothing in the record puts these cases into the same category as Para Techs. Trust v. Commissioner, supra, so that we would require separate counsel even with an apparent waiver. Although Mary Wheaton and respondent did, on July 1, 1996, stipulate that Mary Wheaton is an innocent spouse for tax years

1979 through 1990, we do not take that stipulation as determinative of the fact that Frank and Mary Wheaton had a nonwaivable conflict.

Dorchester and Frank Wheaton also argue that, besides a conflict of interest, Gilson and Wodlinger had no authority to enter into a joint settlement because they had no authority to do so on behalf of Mary Wheaton. We do not believe that Gilson and Wodlinger lacked authority with respect to Mary Wheaton. First, Mary Wheaton had told Gilson and Wodlinger to take their direction from Frank Wheaton. We have found that Frank Wheaton authorized a settlement of the docketed cases. Second, Mary Wheaton has stipulated with respondent that Gilson and Wodlinger had authority to enter into a settlement of the docketed cases on her behalf (Mary Wheaton's authority stipulation), "which settlement was set forth in an exchange of correspondence between the parties dated November 6, 1995." In Mary Wheaton's response to respondent's motions for entry of decision (Mary Wheaton's response), she avers that she was neither consulted with respect to the settlement nor did she authorize the purported settlement or have any knowledge of it. In Mary Wheaton's response, she also claims that she has been in poor health during the period of this litigation and has relied "totally" on her husband. From the various papers filed in these cases by Frank Wheaton and by Mary Wheaton and from other evidence in the record, we conclude that Mary Wheaton did not involve herself in these cases and

relied on her husband for leadership and direction. Indeed, in his affidavit attached to Mary Wheaton's response, Frank Wheaton states: "She [Mary Wheaton] has never been involved in any of my many business ventures. She has very little, if any, knowledge of any of these ventures, or of this proceeding." We believe that Mary Wheaton gave Frank Wheaton full authority to represent her interests in these cases and to make decisions on her part. That reflects the instruction that Mary Wheaton gave to Gilson and Wodlinger, that they take their instructions from Frank Wheaton. We find that Gilson and Wodlinger had authority to enter into a settlement with respect to the docketed cases on behalf of Mary Wheaton.

We have found that Gilson and Wodlinger obtained an informed waiver from Mary Wheaton and had authority to enter into a joint settlement. We also find that there was no showing of prejudice to either Dorchester or Frank Wheaton on account of the simultaneous representation of Mary Wheaton. Dorchester has not favored us with a brief, so we have no idea what it might claim. Frank Wheaton claims that his representation was materially limited. He states that, in November 1995, he was totally unaware that, if his wife claimed to be an innocent spouse, her assets would not be available should they settle: He "depended on their existence and availability should the parties settle." First, we do not believe that Frank Wheaton was unaware of the innocent spouse defense. He is the one that stated to Gilson and

Wodlinger that "he was not going to have that defense raised." Second, he has not demonstrated to us that his wife had any substantial separate assets or, even if she did, that he would have any claim to those assets should respondent choose to pursue him for the full amount of the settlement figures in the docketed cases in which he and Mary Wheaton are petitioners. In any event, section 6013(d)(3) imposes joint and several liability for the tax on spouses making a joint return of income, and, therefore, Frank Wheaton's liability is independent of the existence of Mary Wheaton's separate assets.

F. Rescission

Lastly, Dorchester and Frank Wheaton argue that respondent has rescinded her agreement with Dorchester and Frank Wheaton by entering into a subsequent agreement with Mary Wheaton allowing her to claim innocent spouse relief (the innocent spouse agreement). Dorchester and Frank Wheaton claim that Mary Wheaton's assets are no longer available to satisfy the "$40 million settlement": "Respondent's counsel has unilaterally pulled the rug out from under Mr. Wheaton."

As a preliminary matter, we fail to see how that argument benefits Dorchester. On the facts as we understand them, nothing in the Code or the settlement agreement makes either Mary or Frank Wheaton responsible for Dorchester's liability or vice versa. Dorchester has failed to show any protected right or interest that is affected by respondent's agreement with Mary

Wheaton. Dorchester is entitled to no relief on account of respondent's agreement with Mary Wheaton.

Also, we fail to see that any protected right or interest of Frank Wheaton is affected by the innocent spouse agreement. First, nothing in either the November 3 letter, the November 6 letter, or the November 6 response makes Frank Wheaton's income tax liability contingent in any way upon Mary Wheaton's continuing to be liable for her joint return liability. Second, section 6013(d)(3) provides that the signers of a joint return are jointly and severally liable for any tax due. That fact was a significant factor in our denying relief to taxpayers making claims similar to Frank Wheaton's in Himmelwright v. Commissioner, T.C. Memo. 1988-114, and Garvey v. Commissioner, T.C. Memo. 1993-354. Frank Wheaton's primary concern appears to be economic; he expected Mary Wheaton to contribute to payment of the deficiency. As explained in Estate of Ravetti v. Commissioner, T.C. Memo. 1989-45, however, the right of contribution with which Frank Wheaton is concerned is a matter to be resolved under State law. Frank Wheaton is entitled to no relief on account of respondent's agreement with Mary Wheaton.

III. Conclusion

Dorchester, Frank Wheaton, and respondent entered into a settlement agreement in the docketed cases. For the reasons stated, we shall (1) grant respondent's motion with respect to Dorchester in docket No. 20515-93, (2) grant respondent's motions

with respect to Frank Wheaton in docket Nos. 20572-93, 27121-93, and 23092-94. We shall deny respondent's motions to the extent that they ask for entry of decisions with respect to Mary Wheaton, and we shall enter decisions with respect to Mary Wheaton in docket Nos. 20572-93, 27121-93, and 23092-94 in accordance with the innocent spouse agreement.

Appropriate orders and

decisions will be entered.

Reviewed by the Court.

COHEN, CHABOT, SWIFT, JACOBS, GERBER, WELLS, RUWE, COLVIN, BEGHE, CHIECHI, LARO, VASQUEZ, and GALE, JJ., agree with this majority opinion.

WHALEN, J., did not participate in the consideration of this opinion.

PARR, J., concurring: I agree with the result reached in this case.  I write separately, however, to emphasize that nothing in the majority opinion should be understood to limit the sound discretion of the Court to reject an agreement between the parties, where good cause is shown and the interests of justice require it.

It is easy to imagine a situation, not here present, where an agreement between the parties may not be in the interests of justice.  For instance, agreements that would abuse the process of this Court, would usurp the Court's control over its calendar, or that would be contrary to sound public policy should not be enforced.  Adams v. Commissioner, 85 T.C. 359, 370-371 (1985).

CHABOT, JACOBS, and LARO, JJ., agree with this concurring opinion.

FOLEY, <u>J</u>., dissenting:  With respect to the three 1993 docketed cases, I agree with the majority.  We should hold the parties to their stipulation.  If, however, a stipulation has not been filed with, or relied upon by, the Court, and either party objects to its enforcement, the stipulation generally should not be enforced.  In <u>Cole v. Commissioner</u>, 30 T.C. 665, 674 (1958), affd. 272 F.2d 13 (2d Cir. 1959), we stated:

> once a stipulation is filed by both sides, it is binding upon them.  Cf. <u>Fred M. Saigh, Jr.</u>, 26 T.C. 171.  But where, for whatever reason, the parties are not in agreement at the time the case is called for trial, it is wholly irrelevant in this connection that they may have been in agreement at some earlier time. * * *

I agree.  With respect to the 1994 docketed case, we should not enforce the parties' prior agreement.