121 T.C. No. 17


UNITED STATES TAX COURT


WALLACE AND DONNETTA DUNCAN, ET AL.,[1] Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 16607-97, 13579-98,      Filed November 24, 2003.
            10022-02, 11095-02,
            11313-02, 11324-02,
            11326-02, 11327-02,
            11338-02, 11339-02,
            11441-02.


        Certain factual issues common to these
consolidated cases have been submitted for voluntary

---

[1] The following cases are consolidated herewith:  Stevan B. Little, docket No. 13579-98; Edward J. and Lillian C. Lefevre, docket No. 10022-02; Frank M. and Maria B. Foley, docket No. 11095-02; Stephen M. and Linda M. Kirchner, docket No. 11313-02; Bernard and Sherley H. Koteen, docket No. 11324-02; Richard E. Briggs and Peggy E. Perry, docket No. 11326-02; Gregory S. and Susan H. Lewis, docket No. 11327-02; Estate of Marion Cornell, Deceased, Barbara A. Cornell, Administrator, and Barbara A. Cornell, docket No. 11338-02; Arthur D. and Hildegard B. Lewis, docket No. 11339-02; and Harvey B. Jacobson, Jr., docket No. 11441-02.

binding arbitration pursuant to Rule 124. The arbitration agreement requires the parties to submit certain information to the arbitrator by a prescribed deadline and gives the arbitrator discretionary authority to request additional information. Ps made a timely submission of information to the arbitrator and another untimely submission to which R waived any objection on condition that Ps submit no additional information. Ps have moved to delay entering the arbitrator's findings in the record on the ground that the arbitrator failed to request and consider certain additional information that they consider essential to their case. <u>Held</u>: Absent good cause, we shall not set aside the terms of an arbitration agreement. Ps' motion is denied.

<u>Moshe Schuldinger</u>, for petitioners.

<u>Roger W. Bracken</u> and <u>Avery B. Cousins III</u>, for respondent.

OPINION

THORNTON, <u>Judge</u>: A primary issue in these consolidated cases is the fair market value of numerous West Virginia natural gas wells with respect to which petitioners claimed charitable contribution deductions. The parties have agreed to resolve this factual valuation issue by voluntary binding arbitration, pursuant to Rule 124.[2] The case is now before us on petitioners' motion to delay entering the arbitrator's findings in the record.

---

[2] Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

On April 14, 2003, the parties filed a Joint Motion for Rule 124 Arbitration, moving that certain factual issues common to these consolidated cases be submitted for voluntary binding arbitration. Attached as an exhibit to the joint motion was the parties' arbitration agreement, executed by the parties' representatives. On April 18, 2003, this Court granted the joint motion.

In the arbitration agreement (reproduced in the appendix hereto) the parties agreed, as relevant herein, to place "no limitations on the materials or sources used by the Arbitrator". The arbitration agreement states:

> Given the Arbitrator's unique knowledge of the facts
> * * *, coupled with both parties' confidence in the
> Arbitrator's good faith and neutrality in this
> arbitration, the parties agree that there is no need
> for either party to submit testimony, expert reports,
> written summaries or affidavits supporting their
> respective positions to the Arbitrator.   * * *
>
>     The parties agree that the Arbitrator may request
> that the parties clarify the Issues or request any
> additional information that the Arbitrator deems
> necessary, during any phase of the arbitration process
> provided all parties are notified of such requests and
> are given the opportunity to participate in any
> discussions.   * * * [Emphasis added.]

Pursuant to the arbitration agreement, the arbitration schedule began with a 30-day discovery period, during which petitioners were required to provide previously requested information to the arbitrator, and each party was to provide "any

additional information * * * relevant and probative" to the arbitral issues. At the conclusion of the 30-day discovery period, if the arbitrator determined that he had sufficient information to prepare findings, then a 30-day review period was to commence. If the arbitrator determined that he did not have sufficient information to prepare findings, then the 30-day review period could be tolled for up to 30 days to allow the arbitrator to request and the parties to provide additional information. At the conclusion of the review period, the arbitrator was required to provide his written findings to both parties simultaneously. Within 10 days thereafter, the parties were required to submit the arbitrator's findings to the Court.

The 30-day discovery period began on May 5, 2003. In a June 30, 2003, letter, the arbitrator advised the parties that he was extending the initial 30-day discovery deadline from June 5 to July 1, 2003, after which "no additional information" could be accepted. On June 13, 2003, petitioners submitted information to the arbitrator. On July 6, 2003, 5 days after the extended deadline, petitioners submitted additional information to the arbitrator. Respondent alleges, and petitioners do not dispute, that on July 24, 2003, the parties informally agreed that respondent would not object to petitioners' July 6, 2003, submission as being untimely if petitioners would submit no additional information to the arbitrator.

On August 29, 2003, the arbitrator submitted his written findings to the parties and the Court.[3]  On October 6, 2003, petitioners filed a motion to delay entering the arbitrator's findings in the record.  In their motion, petitioners note that the arbitrator's written findings include this statement:

> Mr. Williams [petitioners' consultant] correctly points out that if all of the behind-the-pipe reserves were immediately completed to produce, the discount for time would be greatly reduced.  However, there has been no information provided to me that this practice had become a standard procedure in 1993, or even since that date.  [Emphasis added.]

Petitioners argue that by failing to request the information alluded to in the just-quoted passage, the arbitrator "reached his conclusion as to the fair market value of the subject wells without the benefit of * * * full and complete data and information with respect to an essential element of Petitioners' presentation."

On October 23, 2003, respondent filed his opposition to petitioners' motion.

## Discussion

Under Rule 124, "The parties may move that any factual issue in controversy be resolved through voluntary binding arbitration."  Rule 124(a).  The parties must attach to their motion requesting arbitration "a stipulation executed by each

---

[3] Contrary to the terms of the arbitration agreement, the parties have not submitted the arbitrator's written findings to the Court.

party or counsel for each party" regarding the arbitral issues, an agreement to be bound by the arbitrator's findings, and other matters related to the arbitration.  Rule 124(b).

An arbitration agreement represents a contract between the parties.  See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995); AT&T Techs., Inc. v. Communications Workers, 475 U.S. 643, 648 (1986); United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960).  Consequently, a stipulated arbitration agreement, like other stipulations in this Court, is governed by general principles of contract law, cf. Bankamerica Corp. v. Commissioner, 109 T.C. 1, 12 (1997); Dorchester Indus. Inc. v. Commissioner, 108 T.C. 320, 330 (1997), affd. without published opinion 208 F.3d 205 (3d Cir. 2000); Stamos v. Commissioner, 87 T.C. 1451, 1455 (1986); Robbins Tire & Rubber Co. v. Commissioner, 52 T.C. 420, 435-436 (1969), and is enforceable, like other contracts, according to its terms and the parties' intentions, see, e.g., First Options of Chicago, Inc. v. Kaplan, supra at 947; Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63 (1995); Volt Info. Scis., Inc. v. Bd. of Trs., 489 U.S. 468, 479 (1989).  Absent good cause, we shall not set aside the terms of an arbitration agreement.  Cf. Dorchester Indus. Inc. v. Commissioner, supra at 334; Saigh v. Commissioner, 26 T.C. 171, 176 (1956).

In the instant case, the arbitration agreement provides a schedule for submitting information to the arbitrator. After the initial 30-day discovery deadline was extended from June 5 to July 1, 2003, petitioners made an untimely submission of information to the arbitrator on July 6, 2003. Respondent agreed to waive any objection to the untimeliness of this submission on the condition that petitioners submit no additional information. Now, apparently, petitioners wish to have the arbitrator consider additional information.

Petitioners have not persuaded us that they should not be bound by the deadlines set forth in the arbitration agreement for submitting information to the arbitrator. With respondent's agreement, they have already made an untimely submission of additional information to the arbitrator. If petitioners failed to include in prior submissions information that they now believe would have been useful, they have only themselves to blame.

Furthermore, in the arbitration agreement, petitioners agreed that there is no need "to submit testimony, expert reports, written summaries or affidavits supporting their respective positions to the Arbitrator" and that the arbitrator's authority to request additional information was discretionary. Petitioners have no valid cause to complain that the arbitrator did not exercise his discretion to request the additional information that petitioners wish to have considered.

Petitioners have not persuaded us that they should not be bound by the terms of the arbitration agreement.  Accordingly, we shall deny petitioners' motion.  To reflect the foregoing,

<u>An appropriate order</u>

<u>will be issued</u>.

APPENDIX

<u>ARBITRATION AGREEMENT</u>

The Petitioners and Respondent (collectively referred to as "the parties" herein) voluntarily agree to submit certain factual valuation issues ("the Issues"), present in the above-entitled United States Tax Court cases, for binding arbitration. The parties further voluntarily agree to the procedures and terms set forth as follows in this Arbitration Agreement ("the Agreement").

1. ARBITRATOR. The parties agree to select Forrest A. Garb, Forrest A. Garb & Associates, Inc., ("the Arbitrator"), as the sole arbitrator for the issues set forth in paragraph 2 below. The petitioners acknowledge that Mr. Garb was previously employed by Respondent as his expert in the instant Tax Court litigation. The parties further agree that the fees and costs of the Arbitrator will be shared equally by the two parties, subject to the applicable rules and regulations for Government procurement, and that the specific costs and fees will be set forth in a separate contract between the parties and the Arbitrator.

2. ISSUES AND FINDINGS. The parties agree that the Issues submitted for determination by the Arbitrator are solely factual in nature and do not require the Arbitrator to render any legal opinions. The parties further agree that the Arbitrator's final written determinations ("Findings") should address the following:

A.   Determine the reserve volumes and classifications as of December 31, 1993, for the following 16 natural gas wells subject to this arbitration, all of which are located in the Roaring Creek/Valley District, Randolph and Barbour Counties, West Virginia:

| | | |
|---|---|---|
| Anderson 1 | Lamb 1 | Talbott 1 |
| Flanagan 1 | Ricottilli 1 | Talbott 2 |
| Findley 1 | Ricottilli 81-22 | Talbott 3 |
| Keeley 1 | Simmons 1 | Thacker-Luff |
| King 1A | Tahaney-Clark | Wilson 2 |
| King 2A | | |

B.   Prepare projections of production and revenue for each of the subject wells using industry standard procedures, considering all technical and economic data available.

C.   Prepare summary projections of future net revenue and discounted future net revenue by classification for the subject reserves.

D.   Determine a fair-market-value for the subject wells using industry accepted guidelines and methods.

3.   MATERIALS USED BY THE ARBITRATOR.  The parties agree to place no limitations on the materials or sources used by the Arbitrator, except that the Arbitrator's Findings should be based solely on data that would have been available as of December 31, 1993.  While the Arbitrator is not permitted to make any findings of law, it may be necessary for the Arbitrator to refer to existing applicable law, regulations and other industry information normally relied upon and used by petroleum engineers

in determining such valuation issues. To the extent that the Arbitrator refers to any authority or information which he believes is not usually relied upon in the petroleum/gas industry in making similar determinations, such reference(s) should be specifically detailed in or attached to his "Findings".

4. ARBITRATION PROCESS. Given the Arbitrator's unique knowledge of the facts underlying the Issues listed in paragraph 2 above, coupled with both parties' confidence in the Arbitrator's good faith and neutrality in this arbitration, the parties agree that there is no need for either party to submit testimony, expert reports, written summaries or affidavits supporting their respective positions to the Arbitrator. The parties further agree that there is no need for a formal arbitration meeting of the arbitrator with the parties.

The parties agree that the Arbitrator may request that the parties clarify the Issues or request any additional information that the Arbitrator deems necessary, during any phase of the arbitration process provided all parties are notified of such requests and are given the opportunity to participate in any discussions. The parties further agree that there shall be no ex parte communications between the Arbitrator and a party or agent for a party and that any information provided to the Arbitrator must be provided to all parties simultaneously.

The parties agree on the following arbitration time frames and procedures:

A.   As of the later of the date the parties' Joint Motion for Rule 124 Arbitration (with an original of this executed Arbitration Agreement) is granted by the Tax Court, or the date the Arbitrator's fee and costs contract with the parties has been executed, an initial thirty (30) day discovery period will commence during which the Petitioners must provide the Arbitrator with responses to the information request previously submitted to them by Mr. Garb, as well as any additional information that either Petitioners or Respondent believe is relevant and probative on the Issues set forth in paragraph 2 above.

B.   If, at the end of this initial 30 day discovery period, the Arbitrator states in writing to the parties that he has sufficient information to determine his Findings, a 30 day review period commences.  If, however, at the end of the initial 30-day discovery period, the Arbitrator states to the parties in writing that he needs additional information from either party, the commencement of this 30 day review period is suspended as follows:  (1) A period not exceeding fifteen (15) days after the end of the initial discovery period will be provided for the Arbitrator to prepare and pose in writing any requests for additional information.  Copies of such requests or any other

correspondence from the Arbitrator will be provided to all parties simultaneously. (2) From the date they receive any requests for additional information, the parties will have a period not exceeding 15 days to respond in writing to the Arbitrator. (3) The Arbitrator's 30 day review period will commence on the earlier of: (a) the sixteenth (16th) day after the parties receive any written request for additional information from the Arbitrator; or (b) the date the Arbitrator states in writing to the parties that he has sufficient information to make his Findings.

C. By the end of his 30-day review period, the Arbitrator will prepare his written Findings on the Issues. These Findings should state, to the extent necessary, the reasons for any material revisions to the conclusions contained in the 2001 expert witness report previously submitted by Mr. Garb which is currently lodged with the Tax Court. The Arbitrator must provide his written Findings to both parties simultaneously no later than the 30th day of his 30 day review period. The parties will submit the Arbitrator's Findings to the Tax Court within 10 days thereafter.

5. FINALITY. The parties agree to be bound by the Arbitrator's Findings and that the Findings are final and can not be appealed. While the parties agree that the Findings regarding the Issues specified in paragraph 2 above shall be conclusive and

binding on the parties, both parties also recognize that there are additional legal issues present in these docketed cases which may give rise to further legal proceedings, including if necessary, a Tax Court trial.

The parties further agree that while the Findings are not binding on any other participants in the various FMF gas well enterprises who are not petitioners in this consolidated group of Tax Court cases, there is no prohibition against offering the Arbitrator's factual Findings as evidence in any subsequent court proceeding concerning these docketed cases or any other proceeding. Any settlement reached by the parties through the Arbitration, however, shall not serve as an estoppel in any other proceeding.

6. CONFIDENTIALITY. Petitioners acknowledge that the Arbitrator (and any agents he may use during the arbitration process) may have access to Petitioners' returns and return information pertaining to the Issues being arbitrated. Respondent's agents involved in the arbitration and the Arbitrator (and any agents he may use during the arbitration process), are subject to the confidentiality and disclosure provisions of I.R.C. §§ 6103(n), 6103, 7213 and 7431. The parties acknowledge that employees of the Service and all other Treasury employees involved in this arbitration are bound by

I.R.C. § 7214(a)(8) and must report information concerning violations of any revenue law to the Secretary of Treasury.

B. JOHN WILLIAMS, JR.
Chief Counsel
Internal Revenue Service

      /s/                 By:           /s/
MOSHE SCHULDINGER              WARREN P. SIMONSEN
     * * *                         * * *

Date:    4/9/03         Date:       4/11/03