T.C. Memo. 2004-186

UNITED STATES TAX COURT

WFO CORPORATION, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 6913-02, 6914-02,      Filed August 19, 2004.
6915-02, 6916-02.

Terence J. Wolfe and Giselle M. Wolfe, pro sese.

Giselle M. Wolfe (an officer), for petitioner WFO
Corporation.

<u>Stephen J. Neubeck</u> and <u>John A. Freeman</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income taxes, additions to tax, and

---

[1] Cases of the following petitioners are consolidated
herewith:  Terence J. and Giselle M. Wolfe, docket No. 6914-02;
Terence J. Wolfe, docket No. 6915-02; and Giselle M. Wolfe,
docket No. 6916-02.

penalties for the tax years 1994, 1995, 1996, and 1997 as follows:[2]

WFO Corp.
docket No. 6913-02

| Year | Deficiencies | Accuracy-related Penalties Sec. 6662(a) | Addition to Tax Sec. 6551(a)(1) |
|------|------|------|------|
| 1995 | $1,725 | $345.00 | $431.25 |
| 1996 | 95,228 | 19,045.60 | 0 |

Terence J. and Giselle M. Wolfe
docket No. 6914-02

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) |
|------|------|------|
| 1996 | $22,762 | $130.25 |

Terence J. Wolfe
docket No. 6915-02

| Year | Deficiencies | Additions to Tax Sec. 6651(a)(1) | Sec. 6654 |
|------|------|------|------|
| 1994 | $1,980 | $99.00 | $102.75 |
| 1995 | 11,875 | 593.75 | 643.88 |

Giselle M. Wolfe
docket No. 6916-02

| Year | Deficiencies | Accuracy-related Penalty Sec. 6662(a) |
|------|------|------|
| 1995 | $728 | 0 |
| 1997 | 3,914 | $148.40 |

Respondent has moved for entry of decisions with respect to these cases based on a stipulation of settled issues signed by the parties' counsel and filed on March 13, 2003. The

---

[2] Unless otherwise noted, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

stipulation of settled issues, which resolved all pending issues in these cases, was initially submitted by counsel for the parties on March 11, 2003, the day before the scheduled trial. As a consequence, the trial was canceled and the parties were ordered to submit stipulated decisions by May 12, 2003. Commencing April 20, 2003, however, the Court received a series of documents from petitioner Terence J. Wolfe (Mr. Wolfe) and Joseph B. Mansour, in which Mr. Wolfe, speaking on his behalf and purportedly on behalf of petitioner Giselle M. Wolfe (Mrs. Wolfe), and Mr. Mansour, purporting to represent petitioner WFO Corp. (WFO), asserted that counsel for Mr. Wolfe, Mrs. Wolfe, and WFO had signed the stipulation of settled issues without authorization.

On May 19, 2003, respondent filed a Motion for Entry of Decisions. On June 4, 2003, the Court received both a response to respondent's motion, purportedly from all petitioners (with Mr. Mansour purporting to represent petitioner WFO), and a letter from Mrs. Wolfe in which she asserted that she was the sole shareholder of WFO and that Mr. Mansour was not authorized to act on its behalf in this proceeding. The June 4 response reiterated the claim that petitioners' counsel had signed the stipulation of settled issues without authorization. On June 10, 2003, the Court received a second letter from Mrs. Wolfe in which she advised that she had not signed or authorized the June 4 response

and repeated her claim that she, not Mr. Mansour, was WFO's proper representative in its case. We set a hearing to determine the person authorized to represent WFO and to receive evidence with respect to respondent's Motion for Entry of Decisions.

FINDINGS OF FACT

Based upon the evidentiary hearing and the record in these cases, we make the following findings of fact.

Mr. and Mrs. Wolfe resided in Cincinnati, Ohio, when they filed their petitions. They were married at the time but subsequently initiated divorce proceedings.

WFO had its principal place of business in Cincinnati, Ohio, when it filed its petition. WFO is wholly owned by Mrs. Wolfe, who serves as WFO's president and signed WFO's petition as its representative. See Rule 24(b). WFO operates a club under the trade name of Bristol's.

I. Negotiations Leading to the Settlement

Trial in these cases was originally set for January 13, 2003, in Cincinnati, Ohio. Petitioners had retained Mr. Mansour, a certified public accountant, to represent them before the Internal Revenue Service, though Mr. Mansour did not sign any of the petitions in these cases. However, as the trial date approached, petitioners retained James F. McCarthy, III, as counsel. Mr. McCarthy entered his appearance on behalf of Mr. and Mrs. Wolfe and WFO at the calendar call on January 13, 2003,

where he requested a continuance until the Court's March 10, 2003, trial session in Columbus, Ohio. After extended discussion in two hearings of the merits of a continuance, which respondent opposed, and the establishment of a timetable under which petitioners would supply information to respondent's trial counsel, a continuance was granted.

On March 7, 2003, Mr. Wolfe and Joel S. Brant, Mr. McCarthy's associate, attended settlement negotiations with respondent. By day's end, the parties had reached agreement on a basis for settling all issues. Respondent's counsel agreed to draft a stipulation of settled issues for petitioners to review, which was provided to petitioners on Saturday, March 8, 2003.

Mr. and Mrs. Wolfe forwarded the draft stipulation to Mr. Mansour, who expressed his belief that petitioners should not have agreed to certain of its terms. In particular, he believed that respondent had double counted some of WFO's income and included some WFO income in the wrong year. After hearing Mr. Mansour's views, Mr. and Mrs. Wolfe refused to approve the draft stipulation and insisted on continuing negotiations with respondent.

The parties had not resolved the issues that Mr. Mansour raised by the March 10, 2003, calendar call in Columbus, Ohio, which Mr. and Mrs. Wolfe attended. Counsel reported that the parties had not reached a settlement, and we set trial for the

afternoon of Wednesday, March 12, 2003.  We selected the afternoon of March 12 because Mr. McCarthy had oral argument scheduled for the morning of March 12 before the U.S. Court of Appeals for the Sixth Circuit.

The parties continued negotiating over the points Mr. Mansour had raised, but respondent refused to change his position.  Mr. Brant met with Mr. and Mrs. Wolfe and reviewed the two issues Mr. Mansour had raised.  He explained that, while arguments could be raised and presented at trial, respondent would not compromise either of the issues.  On the afternoon of March 11, Mr. and Mrs. Wolfe met with Messrs. McCarthy and Brant and asked that they make one last attempt to convince respondent to concede the disputed points and to determine whether respondent would consider reducing some of the penalties.  Messrs. McCarthy and Brant telephoned respondent's counsel, Stephen J. Neubeck, to convey the Wolfes' position and were advised that respondent would agree to reduce some of the penalties but would make no adjustments on the other issues.  After reporting on respondent's final position, Mr. McCarthy informed petitioners that it was time either to accept the settlement as offered or to go to trial the next day.  He asked Mrs. Wolfe whether she accepted the settlement on behalf of herself and WFO.  She said yes.  Mr. McCarthy then asked Mr. Wolfe whether he accepted the settlement.  He said yes.  Mr.

McCarthy then sought and obtained authority to sign the stipulation of settled issues once it was revised to reflect respondent's concessions on penalties.

Mr. McCarthy communicated the acceptance to Mr. Neubeck and signed the revised stipulation of settled issues later that afternoon. Mr. Wolfe went to Mr. Neubeck's office after leaving Mr. McCarthy's office and thanked him for his cooperation in settling the cases. Late on the afternoon of March 11, 2003, counsel faxed the signed stipulation of settled issues to this Court. We canceled the trial and issued an order requiring the parties to file stipulated decision documents no later than May 12, 2003. Counsel filed an original signed version of the stipulation of settled issues with the Court on March 13, 2003.[3]

## II. Efforts To Repudiate the Settlement

Shortly after the trial was canceled, Mr. Mansour convinced Mr. Wolfe that petitioners should not have agreed to the settlement, and Messrs. Wolfe and Mansour began their efforts to repudiate it. Mr. Wolfe first instructed Mr. Mansour to write Mr. McCarthy, then followed up with his own letter, requesting

---

[3] Counsel faxed a signed copy of the stipulation of settled issues to the Court on Mar. 11, 2003, pursuant to our requirement that they do so as a condition of canceling the trial. However, this version (dated March 11) contained both original and faxed signatures. To provide a document with original signatures for filing, counsel re-signed the stipulation of settled issues on Mar. 12, 2003. They forwarded the March 12 original to the Court, and it was filed on Mar. 13, 2003.

that Mr. McCarthy advise this Court that he had signed the stipulation of settled issues without authorization. Mr. Wolfe further advised Mr. McCarthy that he would refrain from filing a disciplinary complaint against Mr. McCarthy if Mr. McCarthy agreed to inform the Court that the stipulation lacked authorization. In a written reply, Mr. McCarthy refused, noting that to do so would be a fraud on the Court. In response, petitioners terminated Mr. McCarthy's services.

On March 25, 2003, Mr. McCarthy filed a motion to withdraw as petitioners' counsel. On April 11, 2003, respondent filed a response opposing Mr. McCarthy's motion, raising the possibility that he might move to enforce the settlement the parties had reached. We granted Mr. McCarthy's motion to withdraw on April 18, 2003.

Sometime during the spring of 2003, Mrs. Wolfe decided that she did not wish to participate in Messrs. Wolfe's and Mansour's efforts to repudiate the settlement. As described below, a struggle for control of these cases and of WFO ensued, in which Mr. Mansour submitted documents to this Court on behalf of WFO, as its purported representative, and Mr. Wolfe submitted documents on behalf of Mrs. Wolfe, individually, under a purported power of attorney, all of which she subsequently disavowed.

On April 20, 2003, Messrs. Wolfe and Mansour submitted an unsolicited response to respondent's opposition to Mr. McCarthy's motion to withdraw, which they supplemented 2 days later.  Both the original and supplemental submissions addressed the question of whether the settlement should be enforced.  Attached to the original submission was an affidavit signed by Mr. Wolfe, in which Mr. Wolfe stated that Mr. McCarthy had signed the stipulation of settled issues without his or Mrs. Wolfe's authorization.  Mr. Wolfe stated in the affidavit that he had advised Mr. McCarthy on March 11 that there were unagreed issues, that no settlement was authorized until those issues were resolved, and that Mr. McCarthy advised him that he would obtain concessions from respondent on those issues.  Mr. Mansour signed the submissions on behalf of WFO, identifying himself as WFO's secretary.[4]  Mr. Wolfe signed the submissions on his own behalf.  Mrs. Wolfe did not sign these submissions; instead, Mr. Wolfe signed her name, writing "(by POA)" next to the signature.

On April 21, 2003, Mrs. Wolfe, under pressure from Mr. Wolfe, agreed to sign two affidavits, one on behalf of herself and one on behalf of WFO, to the same effect as Mr. Wolfe's

---

[4] Attached to the submission were two documents fashioned as Notices of Entry of Appearance (dated Apr. 9 and 14, 2003, respectively) in which Mr. Mansour purported to "enter an appearance" as the representative of WFO in his capacity as its secretary.

affidavit; namely, that Mr. McCarthy had signed the stipulation of settled issues without authorization.

On April 25, Mrs. Wolfe sent Mr. Mansour a letter terminating his services on her behalf and on behalf of WFO. She instructed him that he was not authorized to represent her or WFO before the Internal Revenue Service or the Tax Court. She also demanded that Mr. Mansour cease and desist from representing to others that he was an officer of WFO. Mr. Wolfe admitted that Mr. Mansour advised him of this letter.

On May 19, 2003, respondent filed a Motion for Entry of Decisions. In an order dated May 20, 2003, we refused to accept for filing Messrs. Wolfe's and Mansour's original and supplemental submissions related to Mr. McCarthy's motion to withdraw. Instead, we permitted petitioners to file a response to respondent's Motion for Entry of Decisions by June 2, 2003. In refusing to accept the initial submissions, we noted that they violated Rule 50(b), and violated Rules 23(a)(3) and 24 insofar as they purported to be on behalf of Mrs. Wolfe. The order specifically referred petitioners to Rule 23(a)(3), which requires an original signature on papers filed by or for a party, and advised petitioners that submissions purportedly on behalf of Mrs. Wolfe under a "POA" or similar designation would be disregarded.

At some point after the March 11 meeting at which they agreed to the settlement, Mr. and Mrs. Wolfe began divorce proceedings.  At a hearing before the Butler County (Ohio) Court of Common Pleas, Division of Domestic Relations, on May 22, 2003, Mr. and Mrs. Wolfe agreed to have one of the managers of Bristol's appointed temporary receiver to manage "their business known as Bristol's."  The order adopting this agreement is dated May 29, 2003.  The order refers only to the trade name "Bristol's" and not to the corporate entity WFO.  It provides in pertinent part:

> The parties agree to have a temporary receiver/manager of their business and specifically agree to Ivan Deborde' [sic].  It is agreed the receiver shall collect all income, deposit the same into a bank account to be established by the receiver or a bank account agreed upon by the parties and that only that receiver shall have the authority to withdraw funds from that account or to write checks out of that account to pay the ordinary and usual bills and expenses of the business.  The receiver shall be and is specifically authorized by the parties to pay the ordinary and normal bills and expenses of the business to keep it operating until further order of this Court,
> * * *

Under the order, Mr. Deborde was to remain as "receiver/manager" until the court could hold a hearing "to determine the management and running of the parties' business known as Bristol's".  In the final paragraph, the order provides that the agreement "was entered into to allow the business to operate until the parties can have the more complete and full hearing" on the issue.

On May 31, 2003, at the behest of Messrs. Wolfe and Mansour, and purportedly acting as "Receiver authorized as Sole Director" of WFO, Mr. Deborde signed a corporate resolution appointing Mr. Mansour WFO's secretary and authorizing him to act as a representative for WFO in this proceeding.

On June 4, 2003, the Court received what purported to be a response from Mr. and Mrs. Wolfe and WFO to respondent's Motion for Entry of Decisions. Mr. Mansour signed on behalf of WFO as secretary. Mr. Wolfe signed on his own behalf. Mrs. Wolfe did not sign the submission; rather, Mr. Wolfe signed Mrs. Wolfe's name, without her knowledge or consent, omitting the "(by POA)" designation he had used on the earlier submissions. This submission repeated the arguments that had been made in the original and supplemental submissions related to Mr. McCarthy's motion to withdraw; i.e., the claim that Mr. McCarthy signed the stipulation of settled issues without Mr. and Mrs. Wolfe's authorization. Attached to the submission was a copy of the affidavit of Mr. Wolfe that had been previously submitted, as well as the two affidavits signed by Mrs. Wolfe on April 21, 2003. On the same day, the Court received a letter from Mrs. Wolfe asserting that she was the sole shareholder of WFO and that Mr. Mansour was not authorized to act on its behalf in this proceeding.

On June 10, 2003, the Court received a second letter from Mrs. Wolfe, advising that she had not signed or authorized the June 4 response to the Motion for Entry of Decisions on her behalf or on behalf of WFO.

We set a hearing in Washington, D.C., to determine the person authorized to represent WFO and to receive evidence with respect to respondent's Motion for Entry of Decisions.

III. Hearing

At the hearing, Mr. and Mrs. Wolfe, Messrs. McCarthy and Brant,[5] and Mr. Neubeck[6] testified.[7]  In light of the unsettled question of the then-authorized representative of WFO, we permitted both Mrs. Wolfe and Mr. Mansour to present whatever argument and evidence each wished on behalf of WFO.

Mrs. Wolfe and Messrs. Brant, McCarthy, and Neubeck all testified consistently with the facts found above.  Mrs. Wolfe

---

[5] We ruled that Mr. Wolfe and Mrs. Wolfe (on her own behalf and on behalf of WFO) had waived any attorney-client privilege by voluntarily testifying about communications they had with their attorneys regarding the settlement process, see State v. Post, 513 N.E.2d 754, 761 (Ohio 1987), and ordered Messrs. McCarthy and Brant to testify regarding those conversations, see Ohio Code of Profl. Resp., DR 4-101(C)(2) and (4) (1998).

[6] To enable Mr. Neubeck to testify as a fact witness, respondent obtained different counsel (John A. Freeman) for that portion of the hearing concerning enforcement of the settlement.

[7] Several days after the hearing, Mr. Mansour, as WFO's purported representative, moved to reopen the evidentiary hearing so that he could testify.  Despite having the opportunity at the hearing, Mr. Mansour failed to call himself as a witness when he presented WFO's case.  We accordingly denied his motion.

further testified that she had been pressured by Mr. Wolfe into signing the affidavits dated April 21, 2003.  She recanted the statements made therein.  She stated that she did not oppose respondent's Motion for Entry of Decisions, either on her own behalf or on behalf of WFO.

Mr. Wolfe testified that in the meeting he and Mrs. Wolfe had with Messrs. McCarthy and Brant on the afternoon of March 11 to consider settlement, he instructed Mr. McCarthy not to sign the stipulation of settled issues until he and Mrs. Wolfe had agreed to all the terms and had an opportunity to review the stipulation.  He testified that, at the conclusion of the meeting, Mr. McCarthy assured him that he would obtain concessions from respondent regarding the purportedly double-counted income and the income included in the wrong year, and that he (Mr. Wolfe) was to meet with Mr. McCarthy the following day to review final settlement documents.  Mr. Wolfe testified that he was surprised to discover that Mr. McCarthy had signed the stipulation without obtaining the foregoing concessions.

Mr. Wolfe further testified that he told Mr. McCarthy at a meeting in January 2003 that Mr. McCarthy was not to make any decisions on his or Mrs. Wolfe's behalf without their written approval.  He testified that he confirmed this instruction in the following letter sent to Mr. McCarthy, which was introduced into evidence:

January 20, 2003

Att:  Jim McCarthy

Ref:  To our recent meeting on January 15th

Jim:

It was a pleasure meeting with you and Jody Brant again and I am looking forward to working together in regards to the IRS matters of Giselle's, WFO CORPORATION and mine.

As you know Giselle had asked me to work with Joe Mansour and to represent WFO in front of the appeals office in order to resolve the unresolved issues.  As you know, we were unable to resolve these issues and it looks as if we will be going to court.
Even though Giselle and I have retained your services in representing us in this matter, you or Jody are not to make any decisions in our behalf without our written approval.

If you have any questions about the above, please contact me.

Sincerely,


Terry J. Wolfe

Regarding Mrs. Wolfe's signature on the response to respondent's Motion for Entry of Decisions, Mr. Wolfe admitted to signing on her behalf and without her knowledge, omitting the "(by POA)" designation he had used on the previous submissions to the Court.  He claimed that he thought he was entitled to do so by virtue of a power of attorney he believed he held for Mrs. Wolfe.

OPINION

I.   Motion for Entry of Decisions

A.   Counsel's Authority To Settle

The question of whether counsel has the authority to settle a case on behalf of a taxpayer is factual and must be decided according to common law principles of agency.  Dorchester Indus., Inc. v. Commissioner, 108 T.C. 320, 331 (1997), affd. without published opinion 208 F.3d 205 (3d Cir. 2000); Adams v. Commissioner, 85 T.C. 359, 369-372 (1985); Kraasch v. Commissioner, 70 T.C. 623, 627-629 (1978).  Authority may be granted by express statements or by implication from a taxpayer's words or deeds.  Estate of Quirk v. Commissioner, T.C. Memo. 1995-234.  Where taxpayers challenge the authority of counsel to act on their behalf, the burden of proof rests with the taxpayers to show that their counsel lacked authority.  Newbern v. Commissioner, T.C. Memo. 1999-112.

The evidence presented on this issue consists of petitioners' various submissions to this Court after cancellation of the trial, documentary evidence introduced at the hearing, and the conflicting testimony of Messrs. McCarthy, Brant, and Neubeck and Mrs. Wolfe, on the one hand, and of Mr. Wolfe, on the other. Distilling truth from the testimony of witnesses, whose demeanor we observe and whose credibility we evaluate, is "the daily grist of judicial life."  Diaz v. Commissioner, 58 T.C. 560, 564

(1972). In <u>Kropp v. Commissioner</u>, T.C. Memo. 2000-148, we described our role in this regard as follows: "As a trier of fact, it is our duty to listen to the testimony, observe the demeanor of the witnesses, weigh the evidence, and determine what we believe." Having done so here, we have no doubt that Mr. Wolfe and Mrs. Wolfe (for herself and on behalf of WFO) gave Mr. McCarthy specific authority to sign the stipulation of settled issues and settle these cases.

Messrs. McCarthy and Brant and Mrs. Wolfe convincingly testified that Mr. McCarthy sought and obtained express authorization from Mr. and Mrs. Wolfe on the afternoon of March 11, 2003, to settle the cases and sign the stipulation of settled issues on behalf of all petitioners. According to the testimony of Mrs. Wolfe and Messrs. McCarthy and Brant, Mr. and Mrs. Wolfe were faced with a decision to accept respondent's final offer or to go to trial the next day. While Mr. Mansour persisted in his claim that income was being double counted and accounted for in the wrong year, Mr. and Mrs. Wolfe were advised by Messrs. McCarthy and Brant that Mr. Neubeck would not concede those issues, and they chose to settle after Mr. Neubeck made concessions on penalties. Mr. Neubeck's recollection of the events of March 11 substantially corroborates that of Mrs. Wolfe and Messrs. McCarthy and Brant.

In direct contradiction to the testimony of Mrs. Wolfe and Messrs. McCarthy and Brant, Mr. Wolfe testified that he did not agree to or authorize a settlement of the cases on the afternoon of March 11.  Instead, he insisted that he had advised Mr. McCarthy that he would not agree to any settlement without respondent's concessions on the two points Mr. Mansour had raised and without first reviewing a final version of the stipulation of settled issues.  According to Mr. Wolfe's testimony, Mr. McCarthy assured him at the conclusion of their meeting on March 11 that he would obtain concessions from respondent on the two disputed points and submit to Mr. Wolfe for his review a revised stipulation of settled issues, with revisions to reflect the changes, the next day.

We conclude that Mr. Wolfe's testimony is not worthy of belief.  Besides being contradicted by the testimony of all other witnesses present at the March 11 meeting or participating in the settlement negotiations, his testimony is highly implausible in the circumstances.  First, accepting Mr. Wolfe's version of events would require us to believe that Mr. McCarthy, an experienced litigator, left unresolved the question of whether a settlement would occur on the afternoon before a scheduled trial—in particular, when he was scheduled to give oral argument the next morning in another case.  We find it unlikely that, as Mr. Wolfe claims, Mr. McCarthy advised him that there would be an

opportunity to review a revised stipulation of settled issues on March 12. The implausibility of Mr. McCarthy's leaving settlement unresolved on March 11 is heightened by the fact that Mr. and Mrs. Wolfe had already once backed away from a tentative settlement reached the preceding Friday (March 7). We find it unlikely that Mr. McCarthy would have failed to review the terms of respondent's offer with the Wolfes and to obtain their final decision whether to accept it on March 11, given these circumstances. Second, Mr. Wolfe has offered no convincing explanation concerning why, if be believed he had not authorized a settlement, he did not think he needed to be present in Columbus for a trial on the afternoon of March 12, which trial had been scheduled in his presence at calendar call on March 10. Finally, it is undisputed that Mr. Wolfe went to Mr. Neubeck's office on March 11 after meeting with Mr. McCarthy and thanked Mr. Neubeck regarding the settlement. Mr. Wolfe attempts to explain this action by insisting that he was assured by Mr. McCarthy that Mr. Neubeck would make the two changes in the settlement he sought. However, we simply do not believe that Mr. Wolfe would have thanked the opposing counsel unless he understood that a final agreement had been reached.

Another aspect of Mr. Wolfe's claims invites further skepticism. To support his position that the settlement was not properly authorized, Mr. Wolfe offered as evidence at the hearing

a January 20, 2003, letter that he purportedly sent to Mr. McCarthy to instruct Mr. McCarthy "not to make any decisions on our behalf without our written approval." Relying on the letter, Mr. Wolfe made the additional claim that he had instructed Mr. McCarthy both orally and in writing that any settlement of these cases required the written approval of himself and Mrs. Wolfe, which was not given.

The claim that this letter was sent to Mr. McCarthy is open to considerable doubt. Messrs. McCarthy and Brant both testified that they had never seen the letter prior to the hearing and that it was not in the client files that Mr. McCarthy's firm maintained. Mr. Wolfe offered no rationale for the requirement of written approval, while Mr. McCarthy convincingly testified that he did not agree, and would not have agreed, to such a condition on his representation of a client in Tax Court, given the Court's compressed trial schedules and general practice of requiring litigants to be prepared at a trial session either to try a case or to provide proof of settlement. On its face, the letter contains irregularities; unlike Mr. Wolfe's other correspondence in the record, it has no mailing address, nor is Mr. Mansour copied thereon. We also note that the letter, if sent, could have had a significant impact on the scope of Mr. McCarthy's settlement authority. Yet on no occasion prior to the hearing did Mr. Wolfe or Mr. Mansour ever mention this letter or

even suggest that a requirement of written authorization to settle existed, either in their post-March 11 letters to Mr. McCarthy challenging his authority to settle, in Mr. Wolfe's affidavit, or in their voluminous submissions to the Court disavowing the settlement. Finally, in at least one other instance Mr. Wolfe submitted a misleading document to the Court; namely, the June 4 response to respondent's Motion for Entry of Decisions on which, as Mr. Wolfe later admitted, he signed his then-estranged wife's name, without her knowledge, at a time when they were engaged in a dispute over the appropriate course of action in this proceeding. Moreover, on this document Mr. Wolfe omitted the "(by POA)" designation he had placed next to Mrs. Wolfe's purported signature on a previous submission, after having been specifically advised by the Court that such a designation would result in a document's being disregarded with respect to his wife. Given Mr. Wolfe's demonstrated willingness to proffer misleading documents and the other factors discussed above, we are not persuaded that the January 20, 2003, letter offered into evidence by Mr. Wolfe was ever sent to Mr. McCarthy.

Based on the evidence adduced at the hearing and the entire record in these cases, we reject Mr. Wolfe's testimony and arguments, and conclude that Mr. Wolfe and Mrs. Wolfe (for herself and as the representative of WFO) authorized Mr. McCarthy to sign the stipulation of settled issues and settle these cases.

B.   Enforcement of the Stipulation of Settled Issues

Having determined that petitioners' counsel was authorized to sign the stipulation of settled issues, we must now determine whether to enforce it, or whether petitioners have presented facts that would warrant excusing them from the settlement they reached on the eve of trial.  We find that they have not.

While we have discretion to set aside a filed settlement stipulation, that discretion will only be exercised for good cause.  Dorchester Indus., Inc. v. Commissioner, 108 T.C. 320, 334 (1997).  Generally, the party seeking to avoid the agreement must show that failure to exercise the discretion would prejudice him, no substantial injury will be occasioned to the opposing party, refusal to exercise discretion might result in injustice, and the inconvenience to the court is slight.  Id. at 334-335; Adams v. Commissioner, 85 T.C. at 375; see also Rule 91(e). Where the court cancels a trial in reliance on a stipulation, the standard is even higher, and the moving party must "satisfy standards akin to those applicable in vacating a judgment entered into by consent".  Dorchester Indus., Inc. v. Commissioner, supra at 335; Stamm Intl. Corp. v. Commissioner, 90 T.C. 315 (1988); Himmelwright v. Commissioner, T.C. Memo. 1988-114.

Mrs. Wolfe filed the petition on behalf of WFO as its president.  Her capacity to act on WFO's behalf when she filed the petition, and her continuing possession of such capacity when

Mr. McCarthy signed the stipulation of settled issues on behalf of WFO on March 11, 2003, are undisputed.  The pending dispute over whether Mr. Mansour should take the place of Mrs. Wolfe as the authorized representative of WFO in this proceeding relates to a period beginning in April of 2003, after the settlement was agreed to and the stipulation of settled issues was signed.[8] Accordingly, the dispute over who currently represents WFO in this proceeding does not affect the determination concerning enforcement of the settlement.

In reliance on the stipulation of settled issues, this Court canceled the trial.  Thus, petitioners must meet a high standard before we will relieve them of their settlement, such as a showing of lack of formal consent, fraud, mistake, or similar ground.  Dorchester Indus., Inc. v. Commissioner, supra at 335. Messrs. Wolfe and Mansour have made no such showing.  To the contrary, the record establishes that Mr. and Mrs. Wolfe were aware of the issues Mr. Mansour had raised and, after consulting with their counsel, decided to accept the settlement rather than incur the expense and risk of a trial.  Accordingly, we conclude that petitioners are bound by the terms of the stipulation of

_____

[8] Messrs. Wolfe and Mansour appear to have conceded, as late as Apr. 21, 2003, that Mrs. Wolfe was the authorized representative of WFO by virtue of their causing her to sign two affidavits on that date concerning the settlement, one on her own behalf and one on behalf of WFO.

settled issues that their counsel signed.  Respondent's Motion for Entry of Decisions will therefore be granted.

II.  <u>Representation of WFO</u>

Rule 24(b) provides that a corporation may be represented in Tax Court proceedings by an authorized officer.  Under Rule 63(c), we have the authority to allow the substitution of a corporate party's representative.  Rule 60(c) provides that the capacity of a fiduciary or other representative to litigate before the Tax Court is determined "in accordance with the law of the jurisdiction from which such person's authority is derived."

Mrs. Wolfe signed WFO's petition and served as its sole authorized representative under Rule 24(b) until Mr. McCarthy entered his appearance on behalf of WFO on January 13, 2003. When we granted Mr. McCarthy's motion to withdraw as counsel on April 18, 2003, a dispute arose regarding the person authorized to represent WFO in this proceeding.  In submissions made on April 20 and 22, 2003 (which were not filed), and on June 4, 2003, Mr. Mansour asserted that he was a corporate officer of WFO and purported to sign those submissions on behalf of WFO.  In a letter received June 4, 2003, Mrs. Wolfe disputed Mr. Mansour's status as a corporate officer and his right to represent WFO in this proceeding.  We treat Mr. Mansour's June 4 submission as a motion to be substituted as WFO's representative in this proceeding pursuant to Rule 63(c).

We must decide whether Mr. Mansour has established that he is an officer of WFO with authority to represent WFO before the Tax Court. We determine Mr. Mansour's capacity to represent WFO under Ohio law. See Rule 60(c). As set forth below, we conclude that Mr. Mansour has not established that he was properly appointed as an officer of WFO with authority to represent WFO in this proceeding, and accordingly we decline to recognize him as WFO's representative under Rules 24(b) and 63.

Ohio Rev. Code sec. 2735.04 (Anderson 2000) provides:

> Under the control of the court which appointed him, as provided in section 2735.01 of the Revised Code, a receiver may bring and defend actions in his own name as receiver, take and keep possession of property, receive rents, collect, compound for, and compromise demands, make transfers, and generally do such acts respecting the property as the court authorizes.

This provision has been construed as giving courts the ability to expand or limit a receiver's power. State ex rel. Celebreeze v. Gibbs, 573 N.E.2d 62, 67-68 (Ohio 1991) ("We interpret this statute as enabling the trial court to exercise its sound judicial discretion to limit or expand a receiver's powers as it deems appropriate."). Thus, in Ohio, a receiver has only the authority granted to him by a court.

We do not read the order appointing Mr. Deborde "temporary receiver/manager" of the business that was identified only as "Bristol's" as giving Mr. Deborde the power to appoint officers for WFO and direct litigation in this Court. Mr. Deborde is one

of the managers of Bristol's. The powers that the Ohio court specifically granted to Mr. Deborde involve only the day-to-day management of the business, such as depositing receipts and paying bills. We further note that Mr. Deborde's appointment was temporary until the court could hold a hearing "to determine the management and running of the parties' business known as Bristol's." The stated purpose of the agreement was "to allow the business to operate."

In light of Mr. Deborde's position as a manager of Bristol's and the limited powers described in the order appointing Mr. Deborde "receiver/manager" of Bristol's, we conclude that Mr. Mansour has not established that the Ohio court granted Mr. Deborde the authority to appoint corporate officers for WFO or to direct the litigation of WFO's case before this Court.[9] Insofar as Mr. Mansour has not established that he is an officer of WFO, authorized to act on its behalf in this proceeding, he is not qualified to represent WFO before this Court. See Rule 24(b). Accordingly, we deny his motion to be substituted as WFO's

---

[9] Our interpretation of the order is further supported by the order's silence regarding the management of the proceedings before this Court. The order incorporated an agreement between Mr. and Mrs. Wolfe. At the time, Mr. and Mrs. Wolfe were aware that respondent was seeking to enforce the settlement and that they disagreed about how to respond. Mrs. Wolfe had expressly disavowed any authority of Mr. Mansour to represent WFO in these proceedings. In these circumstances, the order's silence regarding matters beyond the day-to-day deposit of receipts and payment of bills strongly suggests that it was not intended to cede to Bristol's manager the authority to appoint corporate officers who would make decisions for WFO in these proceedings.

representative.  As a consequence, Mrs. Wolfe remains as WFO's authorized representative.

III. <u>Sanctions</u>

At the conclusion of the hearing, respondent raised the issue of sanctions against petitioners.  We had also advised the parties prior to the hearing that, in the event their positions appeared unjustified after the hearing, sanctions might be appropriate.  Accordingly, by separate order we shall permit the parties to address the issue of sanctions and shall defer entering decisions in these cases pending our consideration of that issue.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.