T.C. Memo. 2009-60

UNITED STATES TAX COURT

ROGER A. BURTON AND COLLEEN C. BURTON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7001-07.                    Filed March 18, 2009.

<u>Claudia M. Revermann</u> and <u>John R. Koch</u>, for petitioners.

<u>David L. Zoss</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined a $239,309 deficiency
in petitioners' 2000 joint Federal income tax and a $47,862
accuracy-related penalty under section 6662(a).

At this time the only issue for decision is whether
petitioners entered into a binding settlement agreement with
respondent's Appeals Office relating to petitioners' joint

Federal income tax liability for 2000.[1]  Petitioners assert that a final binding settlement was entered into under which they were to pay a single lump sum of $60,000 without any further liability to pay statutory interest.  Respondent asserts, among other things, that no final binding agreement was ever reached-- particularly with regard to petitioners' liability for statutory interest.

Unless otherwise indicated, all section references are to the Internal Revenue Code applicable to the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

                        FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

When they filed the petition, petitioners resided in Minnesota.

Over the course of 17 years, petitioners owned the stock in an S corporation that operated a truck stop, a convenience store, storage units, and rental units located in a building complex on Interstate 10.  In 2000 petitioners transferred their stock in

---

[1]  By order dated Apr. 8, 2008, the issue as to whether petitioners entered into a binding settlement agreement with respondent's Appeals Office was severed for trial and decision. Trial of other issues will await resolution of this issue.

the S corporation to an affiliated employee stock ownership plan (ESOP), and the ESOP in turn sold the assets of the S corporation to a third party for $627,344.

The $627,344 was to be paid in installments over a number of years. Robert Olson, acting under a power of attorney for petitioners (Attorney Olson), assisted in the transfer of the S corporation stock and in the sale of the S corporation's assets.

On their 2000 joint Federal income tax return petitioners did not report any of the $627,344 as income.

During an audit by respondent of petitioners' 2000 joint Federal income tax return, Attorney Olson represented petitioners. As a result of the audit, respondent's revenue agent proposed to ignore petitioners' ESOP, to treat the above asset sale as a sale by petitioners directly, and to charge petitioners under sections 1231 and 1366 with the $627,344 in proceeds from the asset sale. Respondent's revenue agent also proposed the $239,309 tax deficiency, the $47,862 section 6662(a) accuracy-related penalty, and statutory interest. Respondent's revenue agent also proposed two alternative adjustments (first alternative--recognize the ESOP but treat the sale by the ESOP of the S corporation's assets as a sale that did not qualify under section 453 for installment sale reporting; second alternative-- recognize the ESOP but, if the sale of the S corporation assets was treated as qualifying under section 453 for installment sale

reporting, treat the sale of the assets under section 453(e) as a second disposition by a related party and charge petitioners with income each year for the payments received by the ESOP).

Petitioners protested the revenue agent's proposed deficiency to respondent's Appeals Office. During the protest Attorney Olson represented petitioners. In petitioners' written protest no mention was made of statutory interest.

In a February 17, 2005, letter respondent's Appeals officer notified petitioners and Attorney Olson that he had been assigned the case. Respondent's Appeals officer further stated that statutory interest would accrue on the proposed tax deficiency as required by law.

Soon thereafter, Attorney Olson and the parties initiated settlement discussions.

In a faxed letter dated July 31, 2006, respondent's Appeals officer stated that for purposes of settlement negotiations the maximum tax that would be due from petitioners on the sale of their S corporation assets was estimated to be $107,000. Respondent's Appeals officer also stated that under his estimate the minimum tax that would be due from petitioners was $90,000. Respondent's Appeals officer further stated that the amount of any settlement would have to at least equal the estimated minimum of $90,000.

During a conference on August 3, 2006, Attorney Olson argued that each side had hazards of litigation of at least 50 percent, and he proposed that petitioners' 2000 Federal income taxes be settled for $40,000.

In a letter dated August 7, 2006, to respondent's Appeals officer, Attorney Olson summarized his calculation of his $40,000 settlement proposal as follows:

| Description | Amount |
|---|---|
| Net sale proceeds | $600,000 |
| Capital gain tax rate | 15% |
| | $ 90,000 |
| Hazards of litigation | 50% |
| | $ 45,000 |
| Addition for future capital gain taxes that would have been paid under current structure | $ 15,000 |
| Subtraction for taxes already paid on $275,000 | $(20,000) |
| Total | $ 40,000 |

In the above July 31, August 3, and August 7, 2006, communications apparently no reference was made to statutory interest.

In a faxed letter dated August 21, 2006, respondent's Appeals officer sent to Attorney Olson revised calculations in which he used $106,881 for the total estimated tax due and in which he restated that from respondent's viewpoint and for settlement negotiations $90,000 was being treated as the minimum

tax due under any settlement.  In this letter no mention was made of statutory interest.

At the next conference, on September 1, 2006, Attorney Olson and respondent's Appeals officer discussed a possible settlement at $60,000.  The record does not reflect what was said, if anything, about statutory interest.

In a faxed letter dated September 1, 2006, respondent's Appeals officer sent Attorney Olson a computerized calculation of interest on a hypothetical tax liability of $25,000.  On the copy of this letter which is in evidence there appears a handwritten calculation reflecting a $60,000 liability that appears to include some statutory interest.  This handwritten calculation reflecting $60,000, however, is not explained and is ambiguous.

On September 7, 2006, respondent's Appeals officer sent a cover letter to Attorney Olson with regard to a proposed settlement with an enclosed Form 870-AD, Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment.  In the September 7, 2006, cover letter respondent's Appeals officer referred expressly to the accrual of statutory interest as follows:

> The computations do not include interest.  By law, interest accrues from the due date of the return.  <u>In order to stop additional interest from accruing, you may enclose full payment payable to the United States Treasury</u>.

The proposed Form 870-AD shows $60,000 as the tax due and refers expressly to the accrual of statutory interest as follows: "with interest as provided by law."

In an October 20, 2006, faxed letter Attorney Olson proposed that a closing agreement be entered into regarding the settlement of petitioners' 2000 joint Federal income tax liability, and on or before October 23, 2006, Attorney Olson mailed to respondent's Appeals officer a proposed closing agreement. The proposed closing agreement stated in part--

> The total sanction amount due to the United States Treasury under this Agreement is Fifty-Five Thousand Dollars ($55,000). The taxpayers shall pay this sum * * * contemporaneously with the execution of this Agreement, or by five (5) payments of Eleven Thousand Dollars ($11,000) per year plus statutory interest paid annually * * *.

After discussing the above language for a closing agreement with one of respondent's closing agreement coordinators, on November 15, 2006, respondent's Appeals officer mailed to Attorney Olson a cover letter with a revised closing agreement for petitioners' signature. In the letter respondent's Appeals officer explained that the tax due under the proposed revised settlement would be $60,000 and that interest would "continue to accrue" thereon until paid.

Attorney Olson notified respondent's Appeals officer that he agreed on behalf of petitioners to the revised closing agreement, and on November 20, 2006, respondent's Appeals officer sent to

Attorney Olson the original revised closing agreement along with the Form 870-AD for signature.

On or about November 27, 2006, petitioners and Attorney Olson signed the closing agreement and the Form 870-AD and mailed them, along with a check for $60,000, back to respondent's Appeals officer. On petitioners' $60,000 check the words "paid in full" were written in the lower left corner.

On November 28, 2006, respondent's Appeals officer mailed a letter to Attorney Olson acknowledging receipt of the closing agreement signed by petitioners, the Form 870-AD signed by petitioners, and petitioners' $60,000 check. In his letter, however, respondent's Appeals officer explained that he could not process petitioners' $60,000 check because that check and petitioners' payment did not include an additional $23,684 in statutory interest respondent's Appeals officer calculated had accrued and was due on the $60,000 through November 30, 2006. Respondent's Appeals officer also included a computation of the $23,684 in accrued interest.

On December 5, 2006, respondent's Appeals officer mailed another letter to Attorney Olson reiterating that the payment due under the settlement that had been discussed was $60,000 in taxes and $23,684 in statutory interest.

Not having received a response from petitioners, on December 11, 2006, respondent's Appeals officer by mail returned

to Attorney Olson with a cover letter petitioners' $60,000 check, and on December 21, 2006, respondent issued the notice of deficiency.

Neither respondent's Appeals officer nor any other representative of respondent or of the United States ever signed the closing agreement that petitioners had signed regarding petitioners' 2000 Federal income tax liability.

OPINION

As explained recently in Dormer v. Commissioner, T.C. Memo. 2004-167, the law applicable to administrative settlement offers involving Federal income taxes is well established. Regulations establish the procedures for closing agreements and compromises under sections 7121 and 7122. Secs. 301.7121-1, 301.7122-1, Proced. & Admin. Regs. These procedures are exclusive and must be satisfied in order to effect an administrative compromise or settlement which will be binding on both a taxpayer and respondent. Rohn v. Commissioner, T.C. Memo. 1994-244, see also Urbano v. Commissioner, 122 T.C. 384, 393 (2004) ("it is firmly established that section 7121 sets forth the exclusive means by which an agreement between the Commissioner and a taxpayer concerning the latter's tax liability may be accorded finality."); Estate of Meyer v. Commissioner, 58 T.C. 69, 70 (1972) ("Section 7121 of the Internal Revenue Code of 1954 sets forth the exclusive procedure under which a final closing

agreement as to the tax liability of any person can be executed"); <u>Harbaugh v. Commissioner</u>, T.C. Memo. 2003-316 ("It is well settled that section 7122 and the regulations thereunder provide the exclusive method of effectuating a valid compromise of assessed tax liabilities."); <u>Ringgold v. Commissioner</u>, T.C. Memo. 2003-199 ("The law regarding compromises is well established. The regulations and procedures under section 7122 provide the exclusive method of effectuating a compromise."). Regulations under sections 7121 and 7122 require that any closing agreement or offer-in-compromise be submitted and/or executed on or in the specific form prescribed by the IRS. Secs. 301.7121-1(d), 301.7122-1(d), Proced. & Admin. Regs.

Respondent has prescribed that one of two forms be used to finalize closing agreements--Form 866, Agreement as to Final Determination of Tax Liability, or Form 906, Closing Agreement on Final Determination Covering Specific Matters. Form 866 is used to determine conclusively a taxpayer's total tax liability for a taxable period. Form 906 is used if an agreement relates to one or more separate items affecting a taxpayer's tax liability. Sec. 601.202(b), Statement of Procedural Rules; see <u>Manko v. Commissioner</u>, 126 T.C. 195, 201-202 (2006).

Further, final authority over administrative settlements involving Federal tax matters has been delegated to Regional Counsel, Regional Director of Appeals, Chiefs, Assistant Chiefs

and Associate Chiefs of the Appeals Offices, Appeals Team Chiefs, Team Managers, Directors of an Appeals Operating Unit, Appeals Area Directors, Deputy Appeals Area Directors, and Appeals Team Case Leaders.  Sec. 601.106(a)(1)(i) and (ii), Statement of Procedural Rules; Delegation Order No. 66 (Rev. 15 Jan. 23, 1992).  The purported closing agreement in this case was never executed by an authorized representative of respondent.  Neither the Appeals officer nor the Closing Agreement Coordinator ever signed the document.

Once a case is docketed in this Court a different framework of rules is typically applied.  In Dormer v. Commissioner, supra, we explained that after a case is docketed in this Court a settlement agreement may be reached and may become final and binding on the parties through contract principles of offer and acceptance.  See also Dorchester Indus. Inc. v. Commissioner, 108 T.C. 320, 330 (1997), affd. without published opinion 208 F.3d 205 (3d Cir. 2000).

As has been stated, it "'is not necessary that the parties [in litigation] execute a closing agreement under section 7121 in order to settle a case pending before this Court, but, rather, a settlement agreement may be reached through offer and acceptance made by letter, or even in the absence of a writing.'"  Id. (quoting Manko v. Commissioner, T.C. Memo. 1995-10).

In this connection, a settlement is a contract, and general principles of contract law govern whether a settlement has been reached. Id. A prerequisite to the formation of a contract is mutual assent to its essential terms, arrived at through offer and acceptance. Id.

Whichever framework and set of rules we apply here, on the record before us we conclude that no settlement was entered into between the parties. Clearly, no final closing agreement was signed by an individual authorized to bind respondent, and no mutual agreement was reached by the parties that either excluded petitioners' liability for statutory interest on the lump sum $60,000 petitioners tendered to respondent or that affirmatively included statutory interest as part of the $60,000 that was tendered by petitioners. The bulk of the relevant documentation in evidence supports the conclusion that statutory interest was to accrue and was to be paid in addition to the $60,000.

We agree with respondent that no mutual agreement was reached on key aspects of the proposed settlement that were being negotiated (particularly as to petitioners' liability for statutory interest) and that no final and binding settlement was entered into between the parties. We also conclude that no person authorized to bind respondent ever executed an agreement

under section 7121.  This case is returned to the general

jurisdiction of the Court for trial.[2]

An appropriate order will be

issued.

---

[2]  In their posttrial memorandum, petitioners for the first time raise equitable estoppel.  This issue is not properly before the Court.  See Rule 39.  In any event, the facts do not support a finding that respondent's Appeals officer made any false representations to or in any way misled petitioners or Attorney Olson about the terms of the proposed settlement.  FPL Group, Inc., & Subs. v. Commissioner, T.C. Memo. 2008-144.