T.C. Memo. 2017-184

UNITED STATES TAX COURT

CLARK J. GEBMAN AND REBECCA GEBMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15941-12.                          Filed September 18, 2017.

        Ps made joint returns of income for the four years in issue.  R
determined deficiencies in tax and penalties for all years.  Ps assigned
error.  In the morning of the day on which this case was called for
trial, Ps met with volunteer counsel.  At the recall of the case for trial
that afternoon, P-H conceded all adjustments and penalties and P-W,
represented at trial by volunteer counsel, moved to continue the case
to give P-W time to file a motion for leave to amend petition to raise
an innocent spouse defense.  We granted the motion to continue.
Subsequently, P-H moved to withdraw his concession, and P-W
moved for leave to amend the petition.  We issued an order to show
cause why, among other things, volunteer counsel, appearing in this
case as a representative of P-W, whose interests appeared materially
adverse to those of P-H, did not have a conflict of interest.  Volunteer
counsel responded, stating, among other things, that the interests of
P-W and P-H were not materially adverse but that P-H would not sign
a waiver consenting to volunteer counsel's representation of P-W.

**[*2]**      Held: Volunteer counsel is now representing P-W in a matter in which, previously, he represented P-H, whose interests are materially adverse to those of P-W, without having obtained P-H's informed consent in writing. See Model Rules of Prof'l Conduct r. 1.9 (Am. Bar Ass'n 2016).

Held, further, to obviate a conflict of interest, volunteer counsel must either withdraw as P-W's counsel or take other steps to obviate that conflict. See Rule 24(g).

Clark J. Gebman, pro se.

Frank Agostino and Eugene Kirman, for petitioner Rebecca Gebman.

Alex Shlivko, for respondent.

MEMORANDUM OPINION

HALPERN, Judge: We decide in this report that attorney Frank Agostino's representation of petitioner wife (Mrs. Gebman) presents a conflict of interest that requires that he either withdraw as her counsel or take other steps to obviate that conflict. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, all Rule references are to the Tax Court Rules of Practice and Procedure, and all Model Rule references are to the Model Rules of Professional Conduct (Model Rules) (Am. Bar Ass'n 2016).

**[*3]**                                    Background

This case is before the Court to redetermine deficiencies in, and accuracy-related penalties with respect to, petitioners' Federal income tax liabilities for their 2007 through 2010 taxable (calendar) years. Respondent's principal adjustments giving rise to the deficiencies are (1) adjustments disallowing substantial (on average, in excess of $1 million) deductions for net operating loss carryovers (NOLs) to each year and (2) an adjustment increasing petitioners' 2007 gross income on account of distributions during that year totaling $210,423 from numerous individual retirement accounts (IRAs) owned by Mrs. Gebman. Petitioners assign error to respondent's determination, making a "general denial on all findings". Respondent denies any error.

Calendar Call

We set this case for trial at the trial session of the Court beginning at 10 a.m. on Monday, January 30, 2017 (sometimes, just January 30), in Room 206, Jacob K. Javits Federal Building, 26 Federal Plaza, New York, N.Y. Petitioners did not appear when we first called the case from the calendar, but petitioner husband (Mr. Gebman) did appear later that morning, unaccompanied by Mrs. Gebman, and we recalled the case. Mr. Gebman explained that Mrs. Gebman was parking the car. Mr. Gebman moved for us to continue the case, a motion we denied. We

[*4] set the case for trial at 1 p.m. that afternoon. Earlier, at the beginning of the trial session, we had announced the presence in the courtroom of volunteer lawyers participating in the New York County Lawyers' Association (NYCLA) Pro Bono Calendar Call Program. We offered Mr. Gebman the opportunity to speak with a volunteer lawyer, and Mr. Agostino, a participant in the calendar call program, introduced himself to Mr. Gebman. Mr. Gebman agreed to meet with Mr. Agostino but stated that he wanted Mrs. Gebman to attend the meeting (she had not yet appeared). Shortly thereafter, Messrs. Gebman and Agostino left the courtroom together.

We recalled the case at 1 p.m., at which time Mr. Gebman again introduced himself, and Mr. Agostino stated that he would be entering an appearance for Mrs. Gebman. We asked whether there was anything preliminary to discuss. Mr. Agostino stated: "Yes. Your Honor. With respect to Clark Gebman, Mr. Gebman will be conceding the deficiency in full." We inquired: "Are you representing him?" Mr. Agostino said that Mr. Gebman would get up. Mr. Gebman arose and said: "I would do as John was saying." We assume that he meant "Frank" (i.e., Mr. Agostino), and Mr. Agostino agrees. We then asked: "Okay. So a concession to the deficiency in full by petitioner husband?" Mr. Agostino replied: "Yes." Respondent's counsel then asked about the penalty, and Mr. Agostino added:

[*5] "And penalty." We inquired of Mr. Gebman as to the penalty. He responded: "I'm going to do what's best for my family, your Honor. And I've been counseled that I've made a mistake, and I need to be accountable to the Government. And I am fully prepared to, whatever I can within my means to do so." He agreed to concede the penalty.

Discussion then turned to Mrs. Gebman, whom Mr. Agostino said wished to raise an innocent spouse defense. He recognized that Mrs. Gebman required leave of the Court to amend the petition in order to raise the defense. Following additional discussion, the Court agreed to continue the case to give Mrs. Gebman time to move for leave to amend the petition to raise an innocent spouse defense. Mr. Agostino represented that Mrs. Gebman would stipulate the correctness of all of respondent's adjustments and penalties, relying only on the innocent spouse defense that she hoped to raise. The Court asked Mr. Gebman whether he agreed to that, and he responded that he did. By order dated January 30, we continued the case and gave Mrs. Gebman until March 1, 2017, to move for leave to amend petition. On January 30, we filed Mr. Agostino's appearance on behalf of Mrs. Gebman.

[*6] Mr. Gebman's Motions

On March 1, 2017, we filed as Mr. Gebman's motion to be relieved of concession a document that he had styled:  Motion to Rescind Plea of Settlement. We denied the motion.  On April 18, 2017, we filed Mr. Gebman's Motion to Reconsider:  The Motion To Be Relieved of Concession (motion to reconsider). Together, those documents total 50 pages and contain much rambling, extraneous matter presented to show the injustice Mr. Gebman is claiming to be fighting. Nevertheless, they do evidence his either continuing (or revived) belief that petitioners have grounds for their assignments of error, particularly with respect to the NOLs (to wit, "NOL carry forward based on hybrid Casualty Loss") and the omitted IRA distributions from Mrs. Gebman's accounts (to wit, "use of retirement funds being of the genre of permissible withdrawal without penalty").  He asks to be relieved of his concession because he feels that he was misinformed by counsel, who led him to make the concession.  He also states:  "[I] was under the impression I would be represented by Counsel when I left the room and returned without Counsel at my side and this was not my choice".

Mrs. Gebman's Motion

On March 1, 2017, we filed Mrs. Gebman's motion for leave to file an amended petition (motion for leave), declaration in support thereof (declaration),

**[\*7]** and memorandum in support of the motion for leave (memorandum). We lodged her amended petition and ordered respondent to respond to the motion for leave.

On April 3, 2017, we filed respondent's objection to the motion for leave, in which, among other objections, he argued that, on the basis of the allegations in her lodged amended complaint, Mrs. Gebman was unlikely to prevail on the merits of her innocent spouse claim.

Telephone Conference

On April 28, 2017, we held a telephone conference with the parties to discuss Mrs. Gebman's motion for leave and Mr. Gebman's motion to reconsider. With respect to the motion for leave, we expressed our concern, as respondent had in his objection, that Mrs. Gebman had not by either the motion for leave or the declaration, or in the lodged amended petition, averred facts that would justify relief under section 6015 (i.e., so-called innocent spouse relief). The discussion focused on the 2007 distributions from Mrs. Gebman's numerous IRAs, which she does not deny. Mr. Agostino spoke for Mrs. Gebman and argued, on the authority of Roberts v. Commissioner, 141 T.C. 569 (2013), a case not cited in the memorandum, that the distributions should <u>not</u> be includible in <u>her</u> separately calculated gross income but, <u>instead</u>, should be includible in Mr. Gebman's

**[*8]** separately calculated gross income because he had wrongfully converted the distributions to his own use. That, Mr. Agostino argued, would provide Mrs. Gebman the grounds for innocent spouse relief. Mr. Gebman asked us to grant the motion to reconsider. We said that we would consider the motions and ended the telephone conference.

Joint Return Liability; Practitioners' Ethical Responsibilities

Before we continue our narrative, it will be helpful if we set forth some of the law governing joint return liability and also describe some of the ethical responsibilities of practitioners appearing before the Court.

In general, if a husband and a wife make a joint return of income, the tax is computed on the aggregate income and the liability for tax is joint and several. See sec. 6013(d)(3). Section 6015 provides relief from the joint and several liability imposed by section 6013(d)(3) in three situations, only two of which appear to have any application here with respect to protecting Mrs. Gebman from the tax liability attaching to the unreported distributions from her IRAs. To qualify for relief under section 6015(b)(1), she would have to show, among other things, that the resulting understatement of income was attributable to an erroneous item of Mr. Gebman's. See sec. 6015(b)(1)(B). To qualify for equitable relief under section 6015(f), she would likely have to show that Mr. Gebman's

**[*9]** fraud was responsible for the erroneous item. <u>See</u> Rev. Proc. 2013-34, sec. 4.01(7)(e), 2013-43 I.R.B. 397, 400. Mrs. Gebman's necessary averments that either the unreported IRA distributions were an erroneous item of Mr. Gebman's or he fraudulently converted the IRAs are inconsistent with, and appear adverse to, at least his present position that respondent erred in including the IRA distributions in petitioners' gross income.[1]

The ethical responsibilities of practitioners are addressed in two places in our Rules. Rule 24(g) addresses in part the duty of a counsel of record representing more than one person with differing interests. Rule 201(a) provides that practitioners before the Court shall carry on their practice in accordance with the letter and spirit of the Model Rules. Mr. Agostino is counsel of record for Mrs. Gebman only. Nevertheless, even if Mr. Gebman had never formed a client-lawyer relationship with Mr. Agostino, and Mr. Gebman was no more than a prospective client of his, Mr. Agostino would owe him certain duties under Model Rule 1.18, Duties to Prospective Client.

---

[1]As to Mr. Gebman's prior position, on January 30 Mr. Gebman stated to the Court that he wished to concede the deficiency in full and the penalties and he did not object to Mrs. Gebman's motion for leave. The motion for leave, however, put Mr. Gebman in jeopardy that, if we granted the motion for leave and Mrs. Gebman succeeded in her innocent spouse defense, respondent would look only to him and his assets to collect any unpaid liability, a result financially adverse to him.

**[*10]** <u>Order To Show Cause</u>

On May 5, 2017, in the light of our concern about Mr. and Mrs. Gebman's differing interests, we served on Mr. Agostino an order to show cause in writing why he had not violated Model Rule 1.18 and should not be relieved of representing Mrs. Gebman. We propounded numerous questions. Mr. Agostino promptly responded to the order. We set forth selected responses.

He acted as both an adviser and an evaluator to Mr. Gebman, which, referencing the Model Rules, he defines to mean that he provided Mr. Gebman with an informed understanding of his rights and obligations and explained the practical implications of his actions. Indeed, with respect to petitioners' assignments of error, he told Mr. Gebman during their January 30 meeting that petitioners' assignments were frivolous (i.e., in Mr. Agostino's words: "not well grounded in fact or warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law"). <u>See</u> <u>Goff v. Commissioner</u>, 135 T.C. 231, 237 (2010) (similarly defining "frivolous"); Model Rule 3.1 (similar). He told Mr. Gebman that prosecution of his claims could "(a) result in the imposition of sanctions pursuant to IRC sec. 6673; and (b) have collateral consequences to Mrs. Gebman." He also told him that he would not represent him in challenging the notice of deficiency or in asking the Court to reconsider its

[*11] denial of his request for a continuance. He did, however, offer "to represent Mr. Gebman, and/or supervise the representation of Mr. Gebman, with respect to the prosecution of the post-assessment collection alternatives available to him under IRC sec. 6330" ("Notice and Opportunity for Hearing Before Levy."). He states that, shortly before recall of the case, "Mr. Gebman told me that he would concede the deficiencies in tax and the penalties after I refused to enter an appearance on his behalf."

With respect to Mrs. Gebman, Mr. Agostino states that he acted as both an advocate and negotiator, which, again referencing the Model Rules, he defines to mean that he zealously asserted her position and sought a result advantageous to her. He decided that, to zealously assert her interests, it was necessary for him to enter an appearance in the case.

We asked Mr. Agostino: "Did you after recall of the case at 1:00 P.M. on January 30, 2017, communicate with * * * [Mr. Gebman] again?" Mr. Agostino responded: "After the calendar call, and out of an abundance of caution, my office requested that Mr. and Mrs. Gebman execute a conflict waiver that would memorialize their informed consent to the course of action recommended by me at the calendar call." Later in his response, Mr. Agostino expands on his answer, stating that he had requested of Mr. Gebman that he meet with him to, among

**[*12]** other things, "execute a pro bono retainer agreement and conflict waiver" and "discuss Mr. Gebman's right to intervene in Mrs. Gebman's Innocent Spouse case".[2] Mr. Agostino did meet with Mr. Gebman (but not with Mrs. Gebman) on February 10, 2017, in his office, in New Jersey. Mr. Gebman communicated to Mr. Agostino, among other things, the procedural history of the case, his objection to the Court's refusal on January 30 not to continue the case, and his mental state following that ruling. At the conclusion of the meeting, when asked to sign a conflict waiver prepared by Mr. Agostino, Mr. Gebman refused. He told Mr. Agostino that, while he supported Mrs. Gebman's innocent spouse defense, he was unwilling to sign the waiver. He said that he felt that he did not want to concede his case. He also told Mr. Agostino that his services would no longer be needed.

Mr. Agostino specifically addresses the question of whether Mrs. Gebman's interests in this case are materially adverse to Mr. Gebman's interests. He advances two reasons Mrs. Gebman's interests are not materially adverse to Mr. Gebman's. First, "both Mr. and Mrs. Gebman contend that Mrs. Gebman is

---

[2]Mr. Agostino's reference to an innocent spouse case is unclear. During the recall of this case at 1 p.m. on January 30, Mr. Agostino informed the Court: "Petitioner wife has an innocent spouse case, innocent spouse claim, pending with the Internal Revenue Service that, I believe, has not been acted upon yet." Mr. Agostino may have been referring to that administrative proceeding, or he may have been referring to this case, were we to give Mrs. Gebman leave to raise an innocent spouse defense.

**[\*13]** entitled to the relief set forth by IRC sec. 6015."  His second reason is that he believes that Mr. Gebman would suffer no financial detriment should Mrs. Gebman succeed in her innocent spouse defense, notwithstanding that respondent as a result would look only to Mr. Gebman to pay the lion's share of the resulting tax liability:

> [A]ccording to Mrs. Gebman and Respondent's filings, Mr. Gebman has not had a paying job since 2007.  Public record searches suggest that he has no assets from which to collect any of the deficiencies here at issue.  Even if he became the target of Respondent's collection action, the most likely outcome is Respondent's classification of his account as "currently not collectible".

That justification appears to agree with Mr. Gebman's claim in his motion to be relieved of concession that, during their January 30 meeting, he was counseled to concede and accept an innocent spouse defense for Mrs. Gebman:  "Lead Counsel [we assume, Mr. Agostino] * * * suggested in two years declare Bankruptcy and it will be over".

Notwithstanding Mr. Gebman's unwillingness to sign the waiver prepared by Mr. Agostino, Mr. Agostino claims that, from Mr. Gebman's filings (his motion to be relieved of concession and the motion to reconsider), the Court "can infer that Mr. Gebman knows that the undersigned is assisting Mrs. Gebman in

**[*14]** prosecuting her Innocent Spouse Claim and that he consents to * * * [Mr. Agostino's] actions on Mrs. Gebman's behalf."

Discussion

I.      Introduction

It is well known that counsel may face a conflict of interest when a joint return is filed, a controversy arises, and both spouses speak with the attorney about the matter. As described in the American Bar Association publication Effectively Representing Your Client Before the IRS, ch. 2, app. D (Am. Bar Ass'n, 6th ed. 2015): "It must be recognized from the outset of representation that each spouse is a separate client even if, for example, a joint return is involved." Moreover: "[I]f one spouse needs to assert the innocent spouse defense, a waivable conflict arises." Id. As we said in Dorchester Indus. Inc. v. Commissioner, 108 T.C. 320, 339 (1997), aff'd, 208 F.3d 205 (3d Cir. 2000): "Certainly, one spouse's claim that she (he) is an innocent spouse can present a conflict of interest to counsel trying to represent both spouses."

On January 30, 2017, Mr. Gebman sought assistance from Mr. Agostino, a volunteer lawyer assisting unrepresented persons as part of the NYCLA Pro Bono Calendar Call Program. And while, initially, Mr. Gebman may have been only a prospective client of Mr. Agostino's, during their interview a client-lawyer

[*15] relationship was established. Mr. Agostino informed Mr. Gebman of his rights and explained the implications of his actions (i.e., Mr. Agostino's opinion that Mr. Gebman's claims were frivolous and, if he persisted, he could attract a sanction that would have collateral consequences to his wife). It is of no moment to the question of whether a client-lawyer relationship resulted that Mr. Agostino may have been volunteering his services to Mr. Gebman on what he expected to be a short-term basis. Model Rule 6.5 addresses nonprofit and court-annexed limited legal services programs. Model Rule 6.5 cmt. [1] makes clear that, with respect to such programs, notwithstanding that there is no expectation of continuing representation, "a client-lawyer relationship is established." Mr. Agostino's client-lawyer relationship with Mr. Gebman began on January 30, and, we assume, lasted until February 10, 2017, when Mr. Agostino invited Mr. Gebman to his office to execute a pro bono retainer agreement and a conflict waiver and to discuss Mr. Gebman's right to intervene in Mrs. Gebman's innocent spouse case. Mr. Gebman told Mr. Agostino that he no longer needed his services. Mr. Agostino established a client-lawyer relationship with Mrs. Gebman on January 30, which continues still.

**[*16]** II.     Ethical Rules

Rule 24(g) is entitled "Conflict of Interest".  In pertinent part it provides:

> If any counsel of record * * * represents more than one person with differing interests with respect to any issue in a case, * * * then such counsel must either secure the informed consent of the client * * *; withdraw from the case; or take whatever other steps are necessary to obviate a conflict of interest or other violation of the ABA Model Rules of Professional Conduct, and particularly rules 1.7, 1.8, and 3.7 thereof.  * * *

The Rule further provides that we may inquire into the circumstances of counsel's employment in order to deter such a violation.  As stated <u>supra</u> p. 9, Rule 201(a) provides that practitioners before the Court shall carry on their practice in accordance with the letter and spirit of the Model Rules.  We have the power to compel withdrawal of a taxpayer's counsel if his or her representation would violate the Model Rules.  <u>See</u> Rule 24(g); <u>Para Techs. Tr. v. Commissioner</u>, T.C. Memo. 1992-575, 1992 WL 237247, at *3.

Model Rule 1.7 is entitled "Conflict of Interest:  Current Clients".  It prohibits a lawyer from representing a client if the representation involves a current conflict of interest.  A representation involves a concurrent conflict of interest if "the representation of one client will be directly adverse to another client".  Model Rule 1.7(a)(1).  Under certain conditions, including obtaining

**[*17]** informed written consent from both clients, a lawyer may represent a client notwithstanding a current conflict of interest. See Model Rule 1.7(b)(4).[3]

Model Rule 1.9 is entitled "Duties to Former Clients". In pertinent part, it provides:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Model Rule 1.18 is entitled "Duties to Prospective Clients". It addresses the duties of a lawyer to a person who consults with the lawyer about the possibility of

---

[3]Model Rule 1.7(b) provides in full:

> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

**[*18]** forming a client-lawyer relationship. If the prospective client does not become a client, the lawyer, in general, may not represent a new client "with interests materially adverse to those of a prospective client in the same or substantially related matter if the lawyer received information from the prospective client that could be substantially harmful to the person in the matter." Id. 1.18(c). When the lawyer has received disqualifying information, representation is permissible, however, if, among other possibilities, "both the affected client and the prospective client have given informed consent, confirmed in writing". Id. 1.18(d)(1).

III.    Discussion

    A.    Introduction

"Loyalty and independent judgment are essential elements in the lawyer's relationship to a client." Model Rule 1.7 cmt. [1]. The competing interests of clients (or of a client and a former client or of a client and a prospective client) may place the lawyer's duties to one client in conflict with his duties to another. See id. With respect to a former client: "The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides." Model Rule 1.9 cmt. [2]. In some circumstances a client (or a former or a prospective client) can consent to the

[*19] lawyer's representing another person whose interests conflict with those of the client (or former or prospective client). See, e.g., Rule 24(g); Model Rules 1.7(b), 1.9(b)(2), 1.18(d)(1). Some conflicts, however, are not consentable. See, e.g., Model Rule 1.7 cmt. [17] ("when the clients are aligned directly against each other in the same litigation"). If the conflict is consentable, then, under the Model Rules, the lawyer may continue to represent a person conflicted in interest with another client (or former or prospective client) if, among other things, he secures informed written consent of both clients, in the case of concurrent clients, see Model Rule 1.7(b)(4), the former client, see Model Rule 1.9(a), or both the former prospective client and the affected client, see Model Rule 1.18(d)(1). Rule 24(g) allows a lawyer to represent persons with differing interests with respect to any issue in a case if he secures the informed consent of the client. In Harbin v. Commissioner, 137 T.C. 93, 99 (2011), we held that Rule 24(g) requires "informed written consent". (Emphasis added.)

While Mr. Gebman and, indeed, Mrs. Gebman may for a short time on January 30 have been no more than prospective clients of Mr. Agostino, beginning at some time on January 30 and ending on February 10, 2017, both Mr. and Mrs. Gebman enjoyed a client-lawyer relationship with Mr. Agostino. Any conflict of interest during that period would be governed by Rule 24(g) and Model Rule 1.7.

**[*20]** Mr. Gebman is now a former client of Mr. Agostino's, which implicates Model Rule 1.9. Because he is a former client, we will limit our consideration to the application of Rule 24(g) and Model Rule 1.9. As discussed, Rule 24(g) addresses counsel of record representing two or more persons with differing interests with respect to any issue in a case and, in lieu of withdrawing from the case, requires such counsel to secure the informed written consent of the client or take whatever steps are necessary to obviate a conflict of interest. The rule is somewhat ambiguous with respect to the situation before us, because Mr. Agostino is not, nor was he ever, counsel of record in this case for Mr. Gebman, nor is Mr. Gebman now a client of his. Model Rule 1.9 seems a better fit, and, indeed, Rule 24(g) contemplates compliance with the Model Rules to obviate a conflict of interest.

While Mr. Agostino was not counsel of record for Mr. Gebman, he formerly represented Mr. Gebman in connection with the tax dispute before us. As used in the Model Rules, the verb "represent" is a term of art. The preamble to the Model Rules, in discussing a lawyer's responsibilities, describes a lawyer, as among other things, "a representative of clients" and further states that, "[a]s a representative * * * a lawyer performs various functions", including, among others, "advisor", "advocate", "negotiator", and "evaluator". Model Rules, preamble, r. 1.8(a) cmts.

**[*21]** [1] and [2]. Mr. Agostino concedes that he acted both as an adviser and as an evaluator to Mr. Gebman and as an advocate and negotiator to Mrs. Gebman. We now consider whether Mr. Agostino is representing Mrs. Gebman in the same, or substantially the same, matter as that in which he represented Mr. Gebman, whether Mrs. Gebman's interests in the matter are materially adverse to Mr. Gebman's interests, and (since we find that her interests are materially adverse to his interests) whether Mr. Agostino obtained from Mr. Gebman informed consent in writing. Because the elements necessary to find a breach of duty to a former client under Model Rule 1.9 (identity or similarity of matter, material adversity, and lack of informed consent in writing) are the same as elements necessary to find a breach of duty to a prospective client under Model Rule 1.18, we have not asked Mr. Agostino to again address those elements for purpose of determining his duty to Mr. Gebman under Model Rule 1.9.

B.     The Same or Substantially the Same Matter

Model Rule 1.9 cmt. [2] states in part: "The scope of a 'matter' for purposes of this Rule depends on the facts of a particular situation or transaction. * * * The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the

[*22] matter in question." Model Rule 1.9 cmt. [3] states in part: "Matters are 'substantially related' * * * if they involve the same transaction or legal dispute".

Petitioners jointly petitioned for redetermination of the deficiencies in tax and penalties, assigning error to all of respondent's adjustments and penalties. As framed by the notice of deficiency and the petition, the legal dispute before us is whether respondent may assess against petitioners some or all of the deficiencies and penalties that he determined. Mrs. Gebman has agreed to concede that the adjustments and penalties are correct, but she would like to be relieved of liability for the tax and penalties with respect to at least the IRA distributions on the grounds that, with respect to the resulting tax liabilities and penalties, she is an innocent spouse, or, to put it another way, that omission of the IRA distributions from petitioners' joint income was an erroneous item of Mr. Gebman's or that he fraudulently converted the IRA distributions to his own use and should have reported the resulting income. Facts concerning the IRAs are central to her innocent spouse defense. Mr. Gebman may dispute the facts as Mrs. Gebman construes them, or he may construe them differently. In any event, his defense of their joint return position and her innocent spouse claim involve the same transactions (IRA distributions) and a dispute as to their tax consequences. Mr. Gebman's intent to defend their return position (if allowed to) puts Mr. Agostino

**[\*23]** (in representing Mrs. Gebman) on the other side from Mr. Gebman (he says that the IRA distributions were not includible in their gross income, she would concede that they were, and, moreover, she wants to claim that it was his (and not her) income). The matter in which Mr. Agostino now represents Mrs. Gebman is the same, or at least substantially the same, matter in which he formerly represented Mr. Gebman.

C.     <u>Adversity of Interests</u>

<u>Harbin</u> is an unusual case involving a taxpayer's claim for relief from joint and several liability made two years after the taxpayer and his former wife (intervenor) had in a prior Tax Court proceeding conceded the deficiencies and penalties from which the taxpayer was claiming relief. Respondent opposed the taxpayer's claim for relief on the ground that he should have raised it in the prior proceeding. We held that the taxpayer was not barred from seeking relief because he had not participated meaningfully in the prior proceeding. <u>See</u> sec. 6015(g)(2). We found that he had participated in the prior proceeding through counsel representing both him and the intervenor, and his "opportunity to raise a claim for relief from joint and several liability * * * was obscured and obstructed by * * * [his attorney's] concurrent representation of * * * [the taxpayer] and intervenor, whose interests were adverse." <u>Harbin v. Commissioner</u>, 137 T.C. at 99. We said

[*24] that the attorney's joint representation of the taxpayer and the intervenor "involved an actual conflict of interest" because the taxpayer "had a viable claim for relief from joint and several liability under section 6015(b) with respect to the deficiencies at issue * * * [and his] claim was directly adverse to the interest of intervenor, who was contesting the deficiencies at issue." Id. We explained that the taxpayer's claim for relief from joint and several liability under section 6015(b) was adverse to the intervenor's interest in contesting the deficiencies at issue because it required the taxpayer to prove that the deficiencies were attributable to "erroneous items" of the intervenor. Id. n.2. Petitioners' positions are reversed here from those of the taxpayer and the intervenor in Harbin because Mr. Gebman is making no claim that he is an innocent spouse; but the point to be drawn from Harbin is that, if Mr. Gebman is contesting the deficiencies at issue, Mrs. Gebman's claim for innocent spouse relief is directly adverse to his interest in contesting the deficiencies. And while Mr. Gebman may have told Mr. Agostino at their February 10, 2017, meeting that he supported Mrs. Gebman's innocent spouse defense, he refused at the meeting to sign the proffered waiver and said that he did not want to concede the case. That decision became certain, and known to Mr. Agostino, on March 1, 2017, when Mr. Gebman filed the motion for leave. Whatever Mr. Gebman may believe with respect to his wife's innocent

[*25] spouse defense, so long as he challenges respondent's adjustment including in petitioners' 2007 gross income the distributions from Mrs. Gebman's IRAs, her defense is adverse to his challenge.

Mr. Agostino has not distinguished Harbin. Perhaps that is because he believes that, notwithstanding that Mrs. Gebman may succeed in her innocent spouse defense, Mr. and Mrs. Gebman are not on that account economically adverse because Mr. Gebman is, in effect, judgment proof and would suffer no financial detriment should Mrs. Gebman succeed in that defense. As we report supra p. 13, Mr. Agostino believes: "[A]ccording to Mrs. Gebman and Respondent's filings, Mr. Gebman has not had a paying job since 2007. Public record searches suggest that he has no assets from which to collect any of the deficiencies here at issue."

The financial interests of a spouse not relieved from joint and several liability are normally adverse to the financial interests of the spouse so relieved because, as we pointed out supra note 1, the Commissioner could look only to the first spouse to collect the tax from which the second spouse was relieved. Mr. Agostino does not address the fact that during the normal 10-year collection period applicable to unpaid taxes, see sec. 6502(a), Mr. Gebman's fortunes may change. Mr. and Mrs. Gebman's interests are therefore not only adverse because

[*26] Mr. Gebman wishes to contest the liability from which Mrs. Gebman seeks relief but also because her success in seeking that relief would be financially adverse to him. Those are both disabilities that might well have been cured had Mr. Gebman signed the waiver proferred by Mr. Agostino, which Mr. Gebman refused to do.

We conclude and find that Mr. and Mrs. Gebman's interests are materially adverse within the meaning of Model Rule 1.9 and Mr. Agostino has a conflict of interest.

### D. Informed Consent

Mrs. Gebman's interests are materially adverse to Mr. Gebman's interests in the same matter, and, to represent Mrs. Gebman, Mr. Agostino must obtain from Mr. Gebman informed consent in writing. See Model Rule 1.9(a). He has not done so. The need for him to obtain such consent from Mr. Gebman was apparent no later than February 10, 2017, when Mr. Gebman refused to sign the waiver prepared by Mr. Agostino, terminated Mr. Agostino's services, and told him that he did not want to concede his case.[4]

---

[4]We do not address the application of Rule 24(g) and Model Rule 1.7 to the period beginning on January 30, when Mrs. Gebman decided to pursue an innocent spouse defense, and ending on February 10, 2017, when Mr. Agostino no longer represented both Gebmans.

**[\*27]** IV.    <u>Conclusion</u>

As stated, Mr. Agostino has a conflict of interest.  To obviate that conflict, he must either withdraw as Mrs. Gebman's counsel or take other steps to obviate that conflict.  <u>See</u> Rule 24(g).  If he does not obviate the conflict within 10 days of this report, we will order him removed as Mrs. Gebman's counsel.

We will grant the motion to reconsider and, further, we will relieve Mr. Gebman of his concession, allowing him to proceed with challenging the deficiencies and penalties in question.

<u>An appropriate order will be issued</u>.